UNITED STATES of America, Plaintiff–Appellant,

v.

Anthony GAINES, Defendant–Appellee.

No. 95–2374.

United States Court of Appeals, Sixth Circuit.

Argued March 13, 1997.

Decided Aug. 8, 1997.

David J. Debold, Asst. U.S. Attorney (argued and briefed), Detroit, MI, for Plaintiff–Appellant.

Jill Leslie Price (argued and briefed), Federal Public Defenders Office, Detroit, MI, for Defendant–Appellee.

Before: JONES, SUHRHEINRICH, and SILER, Circuit Judges.

SUHRHEINRICH, J., delivered the opinion of the court, in which SILER, J., joined. JONES, J. (pp. 331–36), delivered a separate dissenting opinion.

SUHRHEINRICH, Circuit Judge.

The United States Sentencing Guidelines ("Sentencing Guidelines") have engendered much controversy since their inception in 1987. One of the most controversial provisions of the Sentencing Guidelines has been the 100:1 quantity ratio of powder cocaine to crack cocaine ("100:1 ratio"). The 100:1 ratio treats an individual who traffics in a given quantity of crack cocaine the same as it treats one who traffics in 100 times as much powder cocaine. The United States Sentencing Commission ("Sentencing Commission") and Congress have engaged in an ongoing dialogue regarding the propriety of the 100:1 ratio. The most recent exchange between these two entities concerning the 100:1 ratio raises the single question on review in the case before us: whether a district court has the statutory authority to depart downward in the sentencing of a crack cocaine dealer on the ground that the Sentencing Commission, as opposed to Congress, determined that the 100:1 ratio should be eliminated.[1] The district court concluded it had such authority and departed downward to the statutory minimum in sentencing Anthony Gaines for possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a). The United States appeals.[2] We **VACATE** and **REMAND** for resentencing consistent with this opinion.

---

1. The statutory authority for the district court's departure from the Sentencing Guidelines range is contained in 18 U.S.C. § 3553(b):

   The court shall impose a sentence [within the Sentencing Guidelines range] unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission.

   18 U.S.C. § 3553(b).
   Section 5K2.0 of the Sentencing Guidelines explicitly acknowledges this authority to depart:
   Under 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."
   U.S. Sentencing Guidelines Manual § 5K2.0, p.s.(quoting 18 U.S.C. § 3553(b)).

2. *See* 18 U.S.C. § 3742(b).

## I.

Before the Sentencing Commission originally promulgated the Sentencing Guidelines in 1987, Congress adopted a similar 100:1 ratio in the Anti–Drug Abuse Act of 1986, Pub.L. No. 99–570, 100 Stat. 3207, when it created mandatory minimum and maximum penalties for persons convicted of trafficking in crack and powder cocaine, as well as other controlled substances.[3] 21 U.S.C. § 841(b). The Sentencing Commission, which derives its authority from Congress, *see* 28 U.S.C. § 994; *Mistretta v. United States*, 488 U.S. 361, 412, 109 S.Ct. 647, 676, 102 L.Ed.2d 714 (1989) (holding constitutional the use of the Sentencing Commission to set Sentencing Guidelines under the Sentencing Reform Act of 1984), subsequently incorporated Congress's method of treating cocaine offenders into the original Sentencing Guidelines submitted in April of 1987.[4]

The 100:1 ratio proved to be controversial from the outset. Sensitive to these criticisms, in 1994 Congress directed the Sentencing Commission to study and report on federal sentencing policy as it related to possession and distribution of all forms of cocaine. *See* Omnibus Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, 108 Stat. 1796 (September 13, 1994). The Act stated that the cocaine sentencing report "shall address the differences in penalty levels that apply to different forms of cocaine and include any recommendations the Commission may have for retention or modification of such differences in penalty levels." *Id.*

The result of the Sentencing Commission's work was the book-length *Special Report to the Congress: Cocaine and Federal Sentencing Policy* (1995) [hereinafter *Cocaine Report*], issued in February of 1995, which analyzed each factor perceived to be relevant to the distinction between crack and powder cocaine. In the *Cocaine Report*, the Sentencing Commission concluded that it could not support the penalty scheme in force. "The factors that suggest a difference between the two forms of cocaine do not approach the level of a 100–to–1 quantity ratio. Research and public policy may support somewhat higher penalties for crack versus powder cocaine, but a 100–to–1 ratio cannot be recommended." *Cocaine Report*, p. xiv.

Based on the findings of the *Cocaine Report*, the Sentencing Commission submitted to Congress on May 1, 1995, amendments to the Sentencing Guidelines relating to cocaine offenses.[5] Amendments to the Sentencing Guidelines for the United States Courts, 60 Fed.Reg. 25074, 25074 (May 10, 1995). The Sentencing Commission proposed (1) the

---

3. For example, the statute in its current amended form mandates a 5–year minimum and a 40–year maximum for anyone who traffics in either 5 grams of cocaine base or 500 grams of cocaine powder. 21 U.S.C. § 841(b)(1)(B)(ii) & (iii). Similarly, a 10–year minimum and a life maximum apply to anyone convicted of trafficking in either 50 grams of cocaine base or 5 kilograms of cocaine powder. 21 U.S.C. § 841(b)(1)(A)(ii) & (iii).

4. Congress did not require the Sentencing Commission to adopt the 100:1 ratio in the Sentencing Guidelines. In 28 U.S.C. § 994, Congress granted to the Sentencing Commission broad discretion to establish the Sentencing Guidelines, including the sentencing ratio of its choosing, provided the sentencing scheme met certain minimal requirements, including adherence to several sentencing policies as set forth in 18 U.S.C. § 3553(a)(2).

As promulgated, U.S.S.G. 2D1.1's Drug Quantity Table assigns a base offense level of 18 to anyone who traffics in either 1 to 2 grams of cocaine base or between 100 to 200 grams of powder cocaine. U.S.S.G. § 2D1.1(c)(11). Similarly, the Drug Quantity Table assigns a base offense level of 38 to anyone who traffics in 1.5 kilograms or more of cocaine base or 150 kilograms or more of powder cocaine. U.S.S.G. § 2D1.1(c)(1).

5. The amendment process for the Sentencing Guidelines is described in 28 U.S.C. § 994(p):

The Commission ... may promulgate ... and submit to Congress amendments to the guidelines.... Such an amendment or modification shall be accompanied by a statement of the reasons therefor and shall take effect on a date specified by the Commission, which shall be no earlier than 180 days after being so submitted and no later than the first day of November of the calendar year in which the amendment or modification is submitted, except to the extent that the effective date is revised or the amendment is otherwise modified or disapproved by Act of Congress.

The Sentencing Commission specified an effective date of November 1, 1995, for the proposed amendments. Amendments to the Sentencing Guidelines for the United States Courts, 60 Fed. Reg. 25074, 25074 (May 10, 1995).

elimination of the 100:1 ratio, (2) the placement of penalties for all forms of cocaine at the present powder cocaine levels,[6] and (3) the addition of other sentence enhancements for particular harms typically associated with crack cocaine offenses.

Pursuant to 28 U.S.C. § 994(p), the Sentencing Commission specified an effective date of November 1, 1995, for the amendments. *Id.* In October of 1995, however, Congress considered and rejected the Sentencing Commission's proposed amendments. Pub.L. No. 104–38, 109 Stat. 334 (October 30, 1995). Congress also directed the Sentencing Commission to submit new recommendations regarding cocaine sentencing.[7] Against this backdrop, the district court considered and granted Gaines's request for a downward departure.

## II.

The facts of this case are straightforward and undisputed. In the summer of 1994, agents from the Bureau of Alcohol, Tobacco, and Firearms ("BATF") arranged through a series of phone calls between Gaines and codefendant Orlando Freeman to purchase approximately 500 grams of crack cocaine from Gaines.[8] When Gaines arrived at the location specified for the sale, BATF agents arrested him and seized 500 grams of crack on the front seat of his automobile.

A subsequent search of Gaines's house yielded four handguns and approximately $29,117 in U.S. currency. One of the hand guns had an obliterated serial number. BATF agents and a canine later searched Gaines's impounded vehicle. The canine search revealed a specially constructed secret hydraulic lift compartment that contained approximately three kilograms of crack cocaine. Gaines waived his *Miranda* rights and told the officers that he trafficked in large quantities of crack cocaine. Gaines also admitted that he and Freeman intended to sell 500 grams of crack cocaine to the BATF agents and that he intended to distribute the remaining three kilograms of crack cocaine later in the evening.

Gaines was charged with (1) conspiracy to distribute cocaine base in violation of 21 U.S.C. § 846; (2) possession of cocaine base with the intent to distribute in violation of 21 U.S.C. § 841(a)(1); and (3) possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k). Gaines pled guilty to all three charges.

Under 21 U.S.C. § 841(a)(1), Gaines faced a minimum term of imprisonment of ten years and a maximum of life. The guideline imprisonment range was 168 to 210 months.[9]

---

6. The Sentencing Commission proposed elimination of the 100:1 ratio and creation of sentencing parity by removing all references to cocaine base in the Drug Quantity Table, U.S.S.G. § 2D1.1(c), and by replacing the definition of cocaine base with a broader definition of cocaine, which includes cocaine base:

   Section 2D1.1(c) is amended by deleting:
   " 'Cocaine base,' for the purposes of this guideline, means 'crack.' 'Crack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form.",
   and inserting in lieu thereof:
   " 'Cocaine,' for the purposes of this guideline, includes cocaine hydrochloride, cocaine base, and crack cocaine."

7. Congress's directive stated that "[t]he United States Sentencing Commission shall submit to Congress recommendations (and an explanation therefor), regarding changes to the statutes and sentencing guidelines governing sentences for unlawful manufacturing, importing, exporting, and trafficking of cocaine and like offenses...." Pub.L. No. 104–38, 109 Stat. 334 (October 30,

1995). Congress also mandated that the Sentencing Commission's recommendations should reflect several considerations: (1) that sentences for trafficking in crack cocaine generally exceed those for powder cocaine, (2) that high-level cocaine dealers generally receive longer sentences than low-level cocaine dealers, (3) that persons who traffic in powder cocaine with the knowledge that it will be converted to crack cocaine be sentenced as if they had trafficked in crack cocaine, and (4) that enhanced sentences should result from cases involving related criminal conduct. *Id.*

8. Freeman pled guilty to a single count of Use of a Communication Facility in Committing a Drug Offense, in violation of 21 U.S.C. § 843(b). He is not a party to this appeal.

9. Gaines's base offense level for the drug counts was 38, because he possessed more than 1.5 kilograms of cocaine base. U.S.S.G. § 2D1.1(c)(1). Level 38 is the top of the Drug Quantity Table. Although Gaines did have four loaded handguns at his house, the two-level enhancement for possession of a firearm, U.S.S.G.

The district court postponed sentencing until after November 1, 1995, in part to determine if Congress would approve the Sentencing Commission's proposed Sentencing Guidelines amendments eliminating the 100:1 ratio.

On November 9, 1995, 10 days after Congress had rejected the proposed amendments, Gaines appeared before the district court for sentencing. The court departed below the applicable guideline range and imposed the mandatory minimum sentence of 120 months. At the sentencing hearing, the court explained its decision as follows:

> THE COURT: The guidelines set a sentencing level of—that has a minimum of 168 months. There is also a statute for mandatory minimum sentence here of 120 months. It does seem to me given much of the testimony and scientific evidence that we have as outlined in the defendant's memorandum that it would be reasonable here to depart downward for the reasons articulated by [Defense Counsel], to depart downward under, is it 5K2.0?
>
> DEFENSE COUNSEL: That's correct, Your Honor.
>
> THE COURT: To the mandatory minimum of ten years. I'll just state for the record that I'm not in the least trivializing the crime here. It's very substantial. The amount was significant but it seems to me, overall, that the statutory minimum is probably a more appropriate sentence than the bottom of the guideline range. And I will therefore sentence the defendant to a period of ten years.

In the Judgment and Commitment Order the district court elaborated on its rationale for the departure. According to the district court, the *Cocaine Report* and the Sentencing Commission's proposed amendments to the Sentencing Guidelines indicated that the Sentencing Commission had not adequately considered the bases for the 100:1 ratio in promulgating the original Sentencing Guidelines. In particular, the district court focused on the following five factors discussed in the *Cocaine Report:*

[The 100:1 ratio] (i) cannot be justified by the psychological effects of the two forms of cocaine; (ii) has a disparate impact on blacks (in the last fiscal year for which data was available, 88.3% of crack defendants were black, 7.1% were hispanic, and only 4.1% were white); (iii) creates higher penalties for street dealers than for their more culpable suppliers; (iv) effects a double punishment on crack defendants in light of subsequent guideline changes; and (v) creates extraordinary disparities given the street values of the two forms of cocaine.

*United States v. Gaines,* No. CR 94–80821–1, at 7 (E.D.Mich. Nov. 13, 1995) (Mem.) (citations to *Cocaine Report* omitted). According to the district court, the Sentencing Commission's failure to consider these factors warranted a departure under U.S.S.G. § 5K2.0 and 18 U.S.C. § 3553(b). Consequently, the court departed below the range specified in the Sentencing Guidelines, to the statutory minimum.

### III.

■ We review a district court's departure from the Sentencing Guidelines under an abuse of discretion standard. *Koon v. United States,* — U.S. —, — – —, 116 S.Ct. 2035, 2046–48, 135 L.Ed.2d 392 (1996); *United States v. Valentine,* 100 F.3d 1209, 1210 (6th Cir.1996). Although we accord substantial deference to the district court, the level of deference is not absolute. "The deference that is due depends on the nature of the question presented." *Koon,* at —, 116 S.Ct. at 2046. When considering factors for departure, for example, this Court grants the district court little deference. "[W]hether a factor is a permissible basis for departure under any circumstances is a question of law, and the court of appeals need not defer to the district court's resolution of the point." *Id.* at —, 116 S.Ct. at 2047.

### IV.

■ Before addressing the parties' arguments, we begin by establishing what this

---

§ 2D1.1(b)(1), was not invoked. Gaines received the full three-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1, giving him a total offense level of 35. Because the adjusted offense level for the obliterated serial number firearm count was so much lower, it had no effect on the guideline range.

case is not. It is not a constitutional challenge to the 100:1 ratio. This Court has rejected every constitutional challenge to the 100:1 ratio for crack and powder cocaine. *See United States v. Smith,* 73 F.3d 1414, 1417–18 (6th Cir.1996) (noting that this Court has rejected vagueness and substantive due process challenges to the 100:1 ratio); *United States v. Lloyd,* 10 F.3d 1197, 1220 (6th Cir.1993) (rejecting equal protection and substantive due process challenges); *United States v. Tinker,* 985 F.2d 241, 242 (6th Cir. 1992) (same); *United States v. Reece,* 994 F.2d 277, 278–79 (6th Cir.1993) (rejecting disparate racial impact claim); *United States v. Avant,* 907 F.2d 623, 627 (6th Cir.1990) (rejecting equal protection, due process, and cruel and unusual punishment arguments). This case also is not a challenge to the district court's refusal to depart downward. This Court has held that a district court's refusal to depart downward based on the 100:1 ratio is unreviewable. *United States v. Pickett,* 941 F.2d 411, 417–18 (6th Cir.1991). Instead, we are asked today to decide for the first time whether a district court has statutory authority to depart downward because the Sentencing Commission—but not Congress—decided that the 100:1 ratio should be eliminated.

The government makes three arguments. First, it claims that the Sentencing Commission's alleged failure to consider the disparities created by the 100:1 ratio is not an appropriate ground for departure because it is not a sufficiently unusual circumstance to set Gaines apart from the heartland of crack cocaine cases.[10] Second, the government argues that the district court erred in concluding that the Sentencing Commission had not adequately considered the bases for the 100:1 ratio prior to issuing the *Cocaine Report.* Third, the government maintains that the district court has no authority to depart downward from the 100:1 ratio because Congress made a clear policy choice in rejecting the Sentencing Commission's proposed elimi-

nation of the sentencing disparity, and the courts may not disregard Congress's will in this matter.

Gaines counters that the downward departure was warranted under 18 U.S.C. § 3553(b) and U.S.S.G. § 5K2.0 because the Sentencing Commission failed to consider the disparate impact of the 100:1 ratio when it originally formulated the Sentencing Guidelines. According to Gaines, the disparate racial and class impacts of the 100:1 ratio are two factors of a kind not adequately taken into account by the Sentencing Commission, and as such, they warrant a departure. Gaines also argues that Congress's rejection of the Sentencing Commission's proposed amendments does not invalidate his argument, because this rejection merely indicates that Congress was dissatisfied with a 1:1 ratio, while leaving open the possibility of the use of any other ratio greater than 1:1 and less than or equal to 100:1.

Gaines's arguments boil down to the following propositions: By issuing the *Cocaine Report,* the Sentencing Commission implicitly admitted that it had not adequately considered many factors when it created the 100:1 ratio. These overlooked factors subsequently created several significant disparities. The disparities, therefore, comprise a mitigating circumstance "not adequately taken into consideration by the Sentencing Commission in formulating the guidelines," *see* 18 U.S.C. § 3553(b), and consequently are a valid basis for a downward departure.

Notwithstanding Gaines's arguments, we think the government's third argument is dispositive on this point. Even if one perceives the Sentencing Commission's *Cocaine Report* as an open admission that the Sentencing Commission did not adequately take into consideration the alleged disparities inherent in the 100:1 ratio, it is clear that Congress did take them into account because it (1) initially directed the Sentencing Commission in 1994 to reexamine the issue, (2)

---

**10.** The Introduction to the Sentencing Guidelines describes the heartland concept:

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When

a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

U.S.S.G. Ch.1 Pt.A.4(b), p.s..

reviewed the Sentencing Commission's *Cocaine Report* in 1995, and (3) affirmatively rejected the Sentencing Commission's proposed amendments in October of 1995. In other words, Congress made a deliberate and informed decision to keep the 100:1 ratio and not to adopt the 1:1 ratio.

■ When Congress and the Sentencing Commission disagree on matters of sentencing policy, Congress trumps. Though Congress delegated broad authority to the Sentencing Commission to promulgate the Sentencing Guidelines and general policy statements, 28 U.S.C. § 994(a), neither could become effective until the Sentencing Commission, "submitted the initial set of sentencing guidelines to the Congress ... along with a report stating the reasons for the Commission's recommendations." Pub.L. No. 98–473, 98 Stat. 1837 (1984). Congress also reserved for itself the right to reject or modify any amendments to the Sentencing Guidelines proposed by the Sentencing Commission. 28 U.S.C. § 994(p). Where the Guidelines and a statute conflict, the statute (an act of Congress) controls. U.S.S.G. § 5G1.1(b) (where statutory minimum sentence is greater than maximum applicable guideline range, statutory minimum sentence trumps). Moreover, the Supreme Court, in upholding the constitutionality of the Sentencing Guidelines, reaffirmed Congress's pre-eminent role in establishing sentencing ranges and the scope of judicial discretion. "Congress, of course, has the power to fix the sentence for a federal crime, *United States v. Wiltberger*, 18 U.S. 76, 5 Wheat. 76, 5 L.Ed. 37 (1820), and the scope of judicial discretion with respect to a sentence is subject to congressional control. *Ex parte United States*, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916)." *Mistretta v. United States*, 488 U.S. 361, 364, 109 S.Ct. 647, 650–51, 102 L.Ed.2d 714 (1989).

Thus, contrary to Gaines's assertion on appeal, Congress did not grant the courts broad discretion to apply the sentencing ratio of their choosing based on alleged injustices inherent in the 100:1 ratio. To allow individual judges to depart downward because of the 100:1 ratio would:

> allow every sentencing district judge to select his or her personal crack-cocaine ratio, at any level between 100:1 (by denying departure) and 1:1. It is hard to imagine a more flagrant violation of the Guidelines' purpose to avoid "unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct."

*United States v. Anderson*, 82 F.3d 436, 440 (D.C.Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 375, 136 L.Ed.2d 264 (1996) (quoting 28 U.S.C. § 991(b)(1)(B)). Reasonable minds can differ as to whether Congress or the Sentencing Commission chose the best policy, but as long as the 100:1 ratio does not violate the Constitution, it is for Congress to make the policy choice, not the Sentencing Commission or the courts.

As the government argues, the district court also lacked the authority to depart downward because the sentencing disparities created by the 100:1 ratio do not set Gaines's case apart from the heartland of crack cases. As the Court stated in *Koon*, "[b]efore a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline." *Koon*, at ——, 116 S.Ct. at 2046. None of the factors listed by the district court in justifying its departure are particular to Gaines or to a subgroup of crack defendants. "In the absence of a characteristic or circumstance that distinguishes a case as sufficiently atypical to warrant a sentence different from that called for under the guidelines, a sentence outside the guideline range is not authorized." U.S.S.G. § 5K2.0, comment.[11] Given these determina-

---

**11.** Gaines attempts to establish what he considers an important distinction between factors "of a kind," as opposed to factors present "to a degree," not considered by the Commission. In particular, Gaines argues that when dealing with factors "of a kind" there is no need to show that the factor renders the case unusual. Gaines, however, cites no authority in the Sentencing Guidelines, statutes, or case law to support his assertion. On the contrary, precedent in this area supports the rule that departures are permitted only where there exists a circumstance of a kind or to a degree that renders the case unusual when compared to others governed by

tions, we need not address the government's remaining argument that the Sentencing Commission adequately considered the bases for the 100:1 ratio when it promulgated the original Sentencing Guidelines, prior to issuing the *Cocaine Report.*

In rejecting the disparities inherent in the 100:1 ratio as invalid considerations for a downward departure under U.S.S.G. § 5K2.0 and 18 U.S.C. § 3553(b), we follow the established precedent of this Court. *United States v. Welch,* 97 F.3d 142, 154 (6th Cir. 1996) ("This Court has held repeatedly that objections to the Sentencing Guidelines' disparate punishments for crimes involving crack cocaine and cocaine powder are meritless and the disparity is insufficient grounds for downward departure from guideline sentences."). We also join every other circuit that has decided this issue after release of the *Cocaine Report.* The Eighth Circuit, for instance, has held that the "crack/powder ratio and its disparate impact are not 'aggravating or mitigating circumstances' particular to the appellants' case which distinguish theirs from 'heartland' cases." *United States v. Lewis,* 90 F.3d 302, 304 (8th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 713, 136 L.Ed.2d 632 (1997). The *Lewis* court specifically rejected the argument that the *Cocaine Report* and Congress's order to the Sentencing Commission to submit new recommendations for drug sentencing are evidence that Congress had not considered the ratio's disparate impact. *Id.* at 305–06. *See also United States v. Fonts,* 95 F.3d 372, 373 (5th Cir.1996); *United States v. Maples,* 95 F.3d 35, 37 (10th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 716, 136 L.Ed.2d 635 (1997); *United States v. Canales,* 91 F.3d 363, 369–70 (2d Cir.1996); *United States v. Ambers,* 85 F.3d 173, 177 (4th Cir.1996); *Anderson,* 82 F.3d at 438–39; *United States v. Sanchez,* 81 F.3d 9, 10–11 (1st Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 201, 136 L.Ed.2d 137 (1996); *United States v. Booker,* 73 F.3d 706, 710 (7th Cir.1996).

## V.

We hold that the district court lacked the authority to depart downward based on the

the same guideline. *See Koon,* at ——, 116 S.Ct.

100:1 ratio. Congress has expressly rejected the Sentencing Commission's proposed amendments eliminating the 100:1 ratio, and the courts must honor this policy choice. Moreover, none of the facts or circumstances of this case serve to remove it from the heartland of crack convictions. We, therefore, **VACATE** and **REMAND** for resentencing consistent with this opinion.

NATHANIEL R. JONES, Circuit Judge, dissenting.

While I accept the premise upon which the majority opinion is based, I nevertheless remain troubled by the inherent lack of equity, rationality, and fairness in the sentencing scheme for crack cocaine offenders. Because I believe that the recommendations of the Sentencing Commission concerning issues of sentencing are entitled to deference, I believe that the downward departure granted by the district court was proper because it was based on the conclusions of the Sentencing Commission. Therefore, I respectfully dissent from the majority opinion which vacates Gaines's sentence and remands for resentencing. Instead, I would affirm the judgment of the district court.

In *Furman v. Georgia,* Justice Marshall noted that the death penalty only continues to be tolerated because it falls primarily on the poor and members of minority groups, the "forlorn, easily forgotten members of society." 408 U.S. 238, 366, 92 S.Ct. 2726, 2791, 33 L.Ed.2d 346 (1972) (Marshall, J., concurring). Justice Marshall's admonishment concerning the death penalty rings equally true for the current crack cocaine sentencing mechanism.

The Sentencing Commission was created because of a disillusionment with the then-current sentencing scheme that varied depending on the sentencing judge. The Sentencing Commission was intended to consolidate the power that had previously been held by the sentencing judge into a uniform body. *Mistretta v. United States,* 488 U.S. 361, 367, 109 S.Ct. 647, 652, 102 L.Ed.2d 714 (1989). The Sentencing Commission was established with the following purposes:

at 2052.

(1) [to] establish sentencing policies and practices for the Federal criminal justice system that—

    (A) assure the meeting of the purposes of sentencing as set forth in section 3553(a)(2) of title 18, United States Code;

    (B) provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct while maintaining sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices; and

    (C) reflect, to the extent practicable, advancement in knowledge of human behavior as it relates to the criminal justice process; and

(2) develop means of measuring the degree to which the sentencing, penal, and correctional practices are effective in meeting the purposes of sentencing as set forth in section 3553(a)(2) of title 18, United States Code.

28 U.S.C. § 991(b). The Sentencing Commission has several functions. It is required to "review and revise" the Sentencing Guidelines, 28 U.S.C. § 994(*o*), promulgate amendments and modifications to the Guidelines, 28 U.S.C. § 994(p), make recommendations to Congress concerning whether particular grades and penalties should be modified, 28 U.S.C. § 994(r), submit to Congress annual reports concerning the operation of the Guidelines, 28 U.S.C. § 994(w), and issue policy statements concerning the Guidelines, 28 U.S.C. § 994(a)(2). Moreover, the Commission is required to "assure that the guidelines and policy statements are entirely neutral as to the race, sex, national origin, creed and socioeconomic status of offenders." 28 U.S.C. § 994(d).

In *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), the Supreme Court upheld the constitutionality of the sentencing guidelines established by the Sentencing Commission. The Court observed that the Sentencing Commission was created because of the disparity in sentencing. *Id.* at 365–66, 109 S.Ct. at 651–52. In addition, the Court noted that in adopting mandatory sentencing guidelines Congress rejected "determinate sentencing" as well as a proposal to make the Guidelines permissive rather than mandatory. *Id.* at 366–67, 109 S.Ct. at 651–52. In upholding the constitutionality of the Guidelines, the Court rejected the petitioner's argument that Congress' delegation of power to the Commission was unconstitutional. *Id.* at 371, 109 S.Ct. at 654. The Court wisely concluded that "Congress simply cannot do its job absent an ability to delegate power under broad general directives." *Id.* at 372, 109 S.Ct. at 655. Noting previous decisions where the Court upheld Congress' delegation of tasks to specific agencies, the Court found that "Congress' delegation of authority to the Sentencing Commission is sufficiently specific and detailed to meet the constitutional requirements." *Id.* at 374, 109 S.Ct. at 656. The Court found that Congress prescribed goals for the Commission and also armed the Commission with the tools to execute those goals. *Id.* The Court further found that the Commission has the power to "determine the relative severity of federal crimes and to assess the relative weight of the offender characteristics that Congress listed for the Commission to consider." *Id.* at 377, 109 S.Ct. at 657 (citation omitted).

There may be a "forked tongue" at play here. Congress created the Sentencing Commission and gave it a mandate. Yet, as the Commission endeavors to fulfill its mandate, the force of the judgment it is to exercise is compromised. I think that it is, therefore, important to review the justification advanced for having such a body and analyze the powers it is expected to discharge.

The reasoning behind the existence of the Sentencing Commission is that an expert body was needed to promulgate rules to standardize sentencing of criminal defendants. *See id.* at 379, 109 S.Ct. at 658 ("Developing proportionate penalties for hundreds of different crimes by a virtually limitless array of offenders is precisely the sort of *intricate, labor-intensive task* for which delegation to

an *expert body* is especially appropriate.") (emphasis added).

The Sentencing Commission was intended to be comprised of those adept at addressing issues concerning our criminal justice system, particularly sentencing. At least three members must be federal judges. 28 U.S.C. § 991(a). The additional members of the Commission are chosen by the President following consultation with "representatives of judges, prosecuting attorneys, defense attorneys, law enforcement officials, senior citizens, victims of crime, and others interested in the criminal justice process.... " 28 U.S.C. § 991(a). The Sentencing Commission consists of experts in the area of criminal justice who are entrusted with the task of ensuring that the Sentencing Guidelines "provid[e] certainty and fairness in sentencing and reduc[e] unwarranted sentence disparities." 28 U.S.C. § 994(f). It was created in order to place the adjudication of this nation's sentencing requirements in the hands of an expert body who is best prepared to administer our system of sentencing, uniformly, fairly, and accurately. The process has not been without its critics because of the way it intrudes upon the exercise of independent judgment by judges.

While Congress has created an expert body entrusted with the adjudication of the Sentencing Guidelines, its suggestions go unheeded. After extensive study the Sentencing Commission has found that the 100:1 ratio is excessive. The Commission found "to the extent that Congress has created a sentencing system that so disparately and substantially punishes crack cocaine over other forms of the same drug, the absence of comprehensive data substantiating this legislative policy is troublesome." *Special Report to the Congress: Cocaine and Federal Sentencing Policy*, 179–80 (1995) ("*Cocaine Report*"). I will attempt to summarize the findings of the *Cocaine Report* succinctly.

The Commission found that "[i]n the early to mid–1980's, a national sense of urgency surrounded the drug problem generally, and crack cocaine specifically." *Id.* at 180. Crack cocaine was perceived to be more dangerous than powder cocaine. *Id.* It was viewed as extremely addictive, responsible

for an increase in crime, the cause of an increase in drug-related deaths, and particularly attractive to young people because of its availability and cost. *Id.* at 180–81. The Commission found that when Congress adopted the crack cocaine differential, the sale and use of crack were still in the early stages. *Id.* at 181. In reassessing the premises behind the differential with the benefit of additional information, the *Cocaine Report* demonstrates that those premises are flawed.

The Commission found that cocaine is not physiologically addictive in either its powder form or the crack cocaine form. *Id.* Rather, both crack and powder cocaine are psychologically addictive. *Id.* Furthermore, crack and powder cocaine differ in the manner of ingestion, but "use of cocaine produces the same type of physiological and psychotropic effects." *Id.* at 182. Thus the Commission concluded that the form of cocaine is only significant because the form generally dictates the manner in which the cocaine is ingested. *Id.* Cocaine users that inject or smoke the substance usually use cocaine more frequently and are more likely to become addicted. *Id.* This can occur regardless of whether crack cocaine or powder cocaine is used. "Determining the appropriate degree of enhancement in penalty based solely on the form of cocaine, therefore, is difficult." *Id.*

The Commission also determined that there is little scientific research to support or disapprove the link between psychosis and crack cocaine use. *Id.* Evidence is sparse— and indeed questionable as to whether the link between crack cocaine and psychosis is greater or lesser than the link between powder cocaine and psychosis. *Id.* at 183. The Commission also found that crack cocaine is associated with systemic crime (crime that is related to the marketing and distribution of crack cocaine), but that the connection with non-systemic crime had not yet been proven. *Id* at 185.

The Commission advises that while crack cocaine does pose greater harms to society than powder cocaine, the differences could not support a 100:1 differential. At the time that Congress adopted the ratio in 1986, the Commission states, there were no Sentencing

Guidelines but the Sentencing Guidelines currently account "for some of those same factors subsumed in the ratio . . . ." *Id.* at 195. In the *Cocaine Report*, the Sentencing Commission fulfilled its mandate to "review and revise, in consideration of comments and data coming to its attention, the guidelines promulgated . . . ." 28 U.S.C. § 994(*o*).

The Sentencing Commission is analogous to a federal agency. *See Stinson v. United States*, 508 U.S. 36, 44–45, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993) ("The Sentencing Commission promulgates the guidelines by virtue of an express congressional delegation of authority for rulemaking, . . . and through the informal rulemaking procedure in 5 U.S.C. § 553, *see* 28 U.S.C. § 994(x). Thus, the guidelines are the equivalent of legislative rules adopted by federal agencies."). It is a specialized agency created to adjudicate issues concerning sentencing. The application and evaluation of the Sentencing Guidelines are "within the Commission's particular area of concern and expertise and [involve an area] which the Commission itself has the first responsibility to formulate and announce." *Id.* at 45, 113 S.Ct. at 1919. I remain committed to the idea that the interpretation by an agency of an area of expertise is entitled to deference by federal courts unless the agency's interpretation violates the Constitution or a federal statute.

Congress has given the Sentencing Commission the authority to review the Sentencing Guidelines periodically and revise them as needed. The Commission has followed this mandate and concluded that a 100:1 ratio is not acceptable in light of the information currently available to the Commission. The opinion of this expert body is entitled to deference by the courts.

The Sentencing Commission has examined the 100:1 ratio in depth and concluded that it is no longer viable. The Supreme Court has noted that "Congress necessarily contemplated that the Commission would periodically review the work of the courts, and would make whatever clarifying revisions to the Guidelines conflicting judicial decisions might suggest." *Braxton v. United States*, 500 U.S. 344, 348, 111 S.Ct. 1854, 1858, 114 L.Ed.2d 385 (1991). The Commission has done just that. Spurred at least in part by both the public outcry concerning the ratio [1] as well as the view of some federal judges that the ratio is unjust,[2] the Commission attempted to evaluate and review our current sentencing scheme. The Commission's findings are found in the *Cocaine Report*. The Cocaine Report is an authoritative conclusion that the 100:1 ratio is unjust and should be revised. The Commission's recommendations are entitled to deference.

It is a basic principle of administrative law that an agency's interpretation of its regulations should be given "controlling weight" as long as the interpretation does not violate the Constitution or a federal statute and is consistent with the regulation. *See Stinson*, 508 U.S. at 45, 113 S.Ct. at 1919 ("[p]rovided an agency's interpretation of its own regulations does not violate the Constitution or a federal statute, it must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'") (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)). The Sentencing Commission is an agency and the Sentencing Guidelines are the regulations of the Sentencing Commission. *See id.* ("[t]he guidelines are the equivalent of legislative rules adopted by federal agencies."). The guidelines were created by the Commission and continue to be revised and amended by the Commission. I emphasize again that Congress has delegated this authority to the Sentencing Commission. Therefore, unless the revised sentencing ratio violates the Constitution, a federal statute, or is plainly erroneous or inconsistent

**1.** In *Just Punishment: Public Perceptions and the Federal Sentencing Guidelines,* a study done by the Sentencing Commission, 69.2% of survey respondents preferred punishment for crack cocaine offenses below the current guideline range. *See* Linda D. Maxfield, Willie Martin & Christine Kitchens, *Just Punishment: Public Perceptions*

*and the Federal Sentencing Guidelines* at *3 (1993–94).

**2.** *See* William Spade, Jr., *Beyond the 100:1 Ratio: Towards a Rational Cocaine Sentencing Policy,* 38 Ariz. L.Rev. 1233, 1282 n.299 & accompanying text (1996).

with the regulations, the Sentencing Commission's rejection of the 100:1 ratio is entitled to "controlling weight." *See also* Kenneth R. Davis & Richard J. Pierce, Jr., *1 Administrative Law Treatise*, § 6.6, 283 (3d ed. 1994) ("The Sentencing Commission issues 'sentencing guidelines' that have the same effect as legislative rules: They bind courts as long as they do not violate the Constitution or a federal statute.").

The Supreme Court has a long history of upholding an agency's interpretation of its own rules. *See, e.g., Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 357, 109 S.Ct. 1835, 1849–50, 104 L.Ed.2d 351 (1989) (holding that the National Forest Service's interpretation of the National Environmental Policy Act was entitled to deference and reversing the decision of the Court of Appeals because it failed to give adequate deference to the Forest Service's interpretation of its own regulation); *Lyng v. Payne*, 476 U.S. 926, 939, 106 S.Ct. 2333, 2341, 90 L.Ed.2d 921 (1986) (finding that the Court of Appeals did not give adequate deference to the Secretary of Agriculture's interpretation of the Consolidated Farm and Rural Development Act and noting "the Court of Appeals' holding runs roughshod over the established proposition that an agency's construction of its own regulations is entitled to substantial deference."); *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980) ("Unless demonstrably irrational, Federal Reserve Board staff opinions construing the [Truth in Lending] Act or Regulation [Z] should be dispositive.... ").[3] It is axiomatic that the Sentencing Commission should also be entitled to the same deference. The Sentencing Commission is similar to any other federal agency to which Congress has delegated specific authority to regulate a particular field based on its given expertise. The Sentencing Commission has expertise in the area of criminal sentencing just as the Securities and Exchange Commission and Federal Trade Commission have expertise in the areas of securities regulation and international trade. The Sentencing Commission's interpretation of the Sentencing Guidelines are entitled to deference by this court. *See Milhollin*, 444 U.S. at 566, 100 S.Ct. at 797 ("The Court has often repeated the general proposition that considerable respect is due 'the interpretation given [a] statute by the officers or agency charged with its administration.... ' This traditional acquiescence in administrative expertise is particularly apt ... because [the agency] has played a pivotal role in 'setting [the statutory mechanism] in motion'.... Congress delegated broad administrative lawmaking power to the [agency] when it framed [the act]. The Act is best construed by those who gave it substance in promulgating regulations thereunder.") (internal citations omitted).

The district court in the instant case properly determined that a downward departure was warranted based on the reasoning of the Sentencing Commission embodied in the *Cocaine Report*. The district court gave "controlling weight" to the determination of the Sentencing Commission concerning a regulation that it is entitled to administer. The administrative deference given to the Sentencing Commission by the district court is consistent with established Supreme Court precedent. *See, supra,* note 3 and accompanying text. I believe that the district court's decision to grant Gaines a downward departure based on the sentencing disparity between crack and powder cocaine should be upheld.

I am aware that the position that I am advocating could be viewed by critics as creating sentencing disparity based on the personal view of a particular judge concerning the propriety of the 100:1 ratio and therefore

---

3. The Supreme Court has also affirmed this principle in other cases involving other federal agencies. *See Batterton v. Francis*, 432 U.S. 416, 432, 97 S.Ct. 2399, 2409, 53 L.Ed.2d 448 (1977) (Secretary of Health, Education and Welfare); *United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155–56, 53 L.Ed.2d 48 (1977) (Department of the Navy); *United States v. City of Chicago*, 400 U.S. 8, 10, 91 S.Ct. 18, 20, 27 L.Ed.2d 9 (1970) (per curiam) (Interstate Commerce Commission); *INS v. Stanisic*, 395 U.S. 62, 72, 89 S.Ct. 1519, 1525–26, 23 L.Ed.2d 101 (1969) (Immigration and Naturalization Service); *Thorpe v. Housing Authority*, 393 U.S. 268, 276, 89 S.Ct. 518, 523, 21 L.Ed.2d 474 (1969) (Housing and Urban Development); *Udall v. Tallman*, 380 U.S. 1, 4, 85 S.Ct. 792, 795, 13 L.Ed.2d 616 (1965) (Department of the Interior).

bringing the sentencing system back to the confusion present prior to the creation of the Sentencing Commission. However, I echo the sentiments of my colleague Judge Wald of the D.C. Circuit in regard to this issue:

> Naturally, I do not suggest that a court should be permitted to depart whenever it decides that a sentence is greater than necessary to satisfy the purposes set forth in § 3553(a). Such a result would gravely undermine one of the central goals of the guidelines—restricting the discretion accorded sentencing judges, in the interests of eliminating unwarranted disparity in sentences. But this case is *sui generis* in the history of the guidelines. Here, the Commission itself has acknowledged that its crack guidelines bear no meaningful relationship to the culpability of defendants sentenced pursuant to them. To my knowledge, the Commission has never before made such an extraordinary mea culpa acknowledging the enormous unfairness of one of its guidelines. For this reason, authorizing departures based on the Special Report could not conceivably start courts down the slippery slope of granting departures every time a defendant claims the guidelines for his type of offense is unfair.

*United States v. Anderson,* 82 F.3d 436, 449–50 (D.C.Cir.1996) (Wald, J., dissenting), *cert. denied,* —— U.S. ——, 117 S.Ct. 375, 136 L.Ed.2d 264 (1996).

Blind adherence to rules that have been proven ineffective, meaningless, and unjust serves no purpose. Not only does such adherence unjustly deprive an individual defendant of his or her liberty, it also deprives the federal courts of their inherent justice. Our current crack cocaine sentencing scheme is unjust. The Sentencing Commission has so acknowledged and now it is time for the federal courts to do the same. I implore my judicial colleagues to acknowledge the admissions of the *Cocaine Report* and accord it the deference that it deserves. I am not calling for a reduction in the stiffness of our drug sentences, but am only seeking equality in sentencing. "It may profit us very little to win the war on drugs if in the process we lose our soul." Spade, *supra,* at 1233 (noting

the words of United States District Court Judge William W. Schwarzer as he imposed a mandatory minimum sentence of ten years on a Defendant with no prior criminal record). And once again, courts are forced to engage in a "wink and a nod," particularly, as the statistics show, the defendants are racial minorities or otherwise socially disfavored. I dissent.