**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ronald Desmond SCAMPINI, Defendant–Appellant.**

No. 89–50378.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 1990.

Decided Aug. 16, 1990.

As Amended Oct. 2, 1990.

Carlton F. Gunn, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

---

Gregory W. Jessner, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before WALLACE, THOMPSON and O'SCANNLAIN, Circuit Judges.

WALLACE, Circuit Judge:

Scampini appeals from the sentence imposed by the district court following his conviction for bank robbery in violation of 18 U.S.C. § 2113(a). He challenges the constitutionality of the Sentencing Guidelines (Guidelines), contending (1) that the Guidelines violate the due process clause of the fifth amendment by restricting a sentencing court's ability to provide individualized sentencing; and (2) that the Guidelines violate the presentment clauses in article I, section 7 of the Constitution. The district court exercised jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We affirm.

I

Both of Scampini's arguments require us to address questions of constitutional law and thus our standard of review is de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

Scampini's argument that the Guidelines violate the due process clause of the fifth amendment by limiting the district court's ability to impose an individualized sentence is foreclosed by our recent decision in *United States v. Brady*, 895 F.2d 538 (9th Cir.1990). In *Brady*, we addressed this precise argument and rejected it, stating:

> the Guidelines do not infringe a defendant's right to an individualized sentence, whether or not such a right is constitutionally mandated. The Guidelines limit a sentencing judge's discretion, but "[a] sentence under the guidelines continues to be highly 'individualized' under the historically accepted criteria" including

"the defendant's criminal history, the degree of seriousness of the crime, as well as a more or less refined categorization of criminal offenses."

*Id.* at 540 (citation omitted).

II

Scampini next contends that the Guidelines violate the presentment clauses of the Constitution. U.S. Const. art. I, § 7, cls. 2 and 3. Those clauses provide in part:

> Every Bill which shall have passed the House of Representatives and the Senate, shall, before it become a Law, be presented to the President of the United States; If he approve he shall sign it, but if not he shall return it, with his Objections to that House in which it shall have originated, who shall enter the Objections at large on their Journal, and proceed to reconsider it. If after such Reconsideration two thirds of that House shall agree to pass the Bill, it shall be sent, together with the Objections, to the other House, by which it shall likewise be reconsidered, and if approved by two thirds of that House, it shall become a Law....

> Every Order, Resolution, or Vote to Which the Concurrence of the Senate and House of Representatives may be necessary ... shall be presented to the President of the United States; and before the Same shall take Effect, shall be approved by him, or being disapproved by him, shall be repassed by two thirds of the Senate and House of Representatives, according to the Rules and Limitations prescribed in the Case of a Bill.

*Id.* In brief, the presentment clauses require that all legislation be presented to the President so that he may have the opportunity to exercise his veto power before any legislation becomes law.

The Supreme Court recently discussed the presentment clauses in *INS v. Chadha*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) (*Chadha*), where the Court passed on the constitutionality of section 244(c)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1254(c)(2) (repealed 1986). Pursuant to sections 244(a)(1) and 244(c)(2) of

that act, the Attorney General was given authority to suspend the deportation of certain deportable aliens, except that either house of Congress could pass a resolution vetoing the Attorney General's decision. *Id.* at 923, 103 S.Ct. at 2769. The Court struck down the one house legislative veto provision contained in section 244(c)(2) as unconstitutional. *Id.* at 959, 103 S.Ct. at 2788. It reasoned that the veto provision violated both the bicameralism requirement of article I, sections 1 and 7, and the presentment clauses, U.S. Const. art. I, § 7, cls. 2 and 3, because it amounted to legislative action which required neither the approval of both houses of Congress nor the approval of the President. *Id.* at 956–57, 103 S.Ct. at 2786–87. The Court emphasized that "[w]hether actions taken by either House are, in law and fact, an exercise of legislative power depends not on their form but upon whether they contain matter which is properly to be regarded as legislative in its character and effect." *Id.* at 952, 103 S.Ct. at 2784 (internal quotation omitted).

Relying on *Chadha,* Scampini contends that the Guidelines were enacted in violation of the presentment requirement of article I, section 7. To put his argument into context, it is important to point out that he does not contend that the Sentencing Commission's promulgation of the Guidelines is an exercise of legislative power subject to the strictures of the presentment clauses. Indeed, he could not. In *United States v. Mistretta,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), the Supreme Court specifically validated Congress's delegation to the Sentencing Commission of authority to make rules governing the sentencing process, and *Chadha* held that this type of "quasi-legislative" power does not constitute legislative action because it "cannot reach beyond the limits of the statute that created it—a statute duly enacted pursuant to Art. I, §§ 1, 7." *Chadha,* 462 U.S. at 953 n. 16, 103 S.Ct. at 2785 n. 16. Absent retained congressional veto power or other such retained authority over the administrative agency's rule-making function, which is "legislative in its character and effect," *id.* at 952, 103 S.Ct. at 2784 (inter-

nal quotation omitted), the presentment clauses are not implicated and the only question is one involving the delegation doctrine. *Id.* at 953–54 n. 16, 103 S.Ct. at 2785–86 n. 16.

Scampini's argument is different. Rather than contending that the Sentencing Commission's promulgation of the Guidelines violated the presentment clauses, Scampini argues that there is a constitutional flaw in the section of the Sentencing Reform Act of 1984 (Act) which provides that the Guidelines could not go into effect until "Congress has had six months ... to examine the guidelines and consider the reports" submitted to it by the Sentencing Commission. Pub.L. No. 98–473, § 235(a)(1)(B)(ii)(III), 98 Stat.1987, 2032 (1984); *see also* 28 U.S.C. § 994(p) (establishing a six month period for Congress to examine and consider any amendment to the Guidelines). Scampini contends that Congress's silence during the six month "examine and consider" period was tantamount to legislative action approving the Guidelines and therefore the Guidelines should have been presented to the President.

One of our sister circuits has addressed the question whether the Guidelines violate the presentment clauses. In *United States v. Barnerd,* 887 F.2d 841 (8th Cir.1989), the Eighth Circuit rejected the defendant's argument that the Guidelines violated the presentment clauses, reasoning: "Delegation of power to the Sentencing Commission to establish the Sentencing Guidelines ... is provided for in 28 U.S.C. § 991, which was signed by the President. The President's signature on the actual guidelines is therefore not required." *Id.* at 842; *see also United States v. Burton,* 898 F.2d 595, 598 (8th Cir.1990) (following *Barnerd* ).

■ We agree with the result reached by the Eighth Circuit that the Guidelines do not violate the presentment clauses, but conclude that further analysis is required. That the President signed the original delegation of authority to the Sentencing Commission, 28 U.S.C. § 991, is important

to the question whether the Sentencing Commission's promulgation of the Guidelines violated the presentment clauses: a claim not raised by Scampini. But it cannot be dispositive of the presentment clauses inquiry here—whether Congress's silent approval of the Guidelines constitutes legislative action subject to the strictures of the presentment clauses. If the President's signature on the delegating legislation were all that was needed, *Chadha* would have been decided differently. The legislation at issue in *Chadha*—the one house veto provision contained in section 244(c)(2) —had been signed into law by the President. *Chadha,* 462 U.S. at 953 n. 16, 103 S.Ct. at 2785 n. 16 (describing the statute as "duly enacted pursuant to Art. I, §§ 1, 7"). Despite the President's signature on the legislation, the Court held section 244(c)(2) to be unconstitutional because it allowed for future legislative action without bicameral approval and presentment to the President. *Chadha,* therefore, makes it clear that the President's signature on the legislation delegating authority does not completely insulate that legislation from presentment clauses review: if a law allows Congress to act in a legislative capacity—i.e., through a retained veto power or other means of control that is legislative in character and effect—without presidential involvement, it is unconstitutional, irrespective of whether the President signed that legislation.

█ The gravamen of Scampini's argument is that silence by the Congress for six months with the resultant operative effect of the proposed Guidelines constitutes an end run around the requirement that legislation must be presented to the President. That is, Scampini contends that Congress's silence during the six month period it was given to "examine and consider" the proposed Guidelines constituted an "implied approval" of the Guidelines that was tantamount to legislative action requiring presentment to the President. Scampini argues that this implied approval is no less a violation of the presentment clauses than was the legislative veto in *Chadha.*

Unlike the one house veto in *Chadha,* however, the "examine and consider" requirement of the Act is not legislative in character and effect. The Act does not purport to allow Congress to alter or invalidate the Sentencing Guidelines by unilateral resolution. Instead, if Congress desires to alter the proposed Guidelines, it must do so by a legislative enactment which would then need to be submitted to the President. Congressional silence during the six month period is no more legislative in character and effect than is Congressional silence on any other regulatory enactment by an administrative agency. The six month consideration period merely provides Congress with an opportunity to legislate before the Guidelines go into effect and thereby avoid the disruption that could result from post-effective-date changes made to a statute of such frequent application. As one district court recently explained in rejecting Scampini's precise argument:

> The six month provision ... resembles the "report and wait" provision of the enabling act of the Federal Rules of Civil Procedure approved by the Supreme Court in *Sibbach v. Wilson & Co.,* 312 U.S. 1 [61 S.Ct. 422, 85 L.Ed. 479] (1941), and more recently in *Chadha,* 462 U.S. at 935 n. 8, 955 n. 19 [103 S.Ct. at 2776 n. 8, 2786 n. 19]. It also resembles the enabling provisions of the Federal Rules of Evidence. *See Chadha,* 462 U.S. at 935 n. 8 [103 S.Ct. at 2776 n. 8]. And although the Guidelines may be more substantive or political in nature than these rules, the Supreme Court has found this distinction to be of negligible utility in determining the constitutionality of the Guidelines, *Mistretta v. United States,* 109 S.Ct. at 664–65; *see also Chadha,* 462 U.S. at 953 n. 16 [103 S.Ct. at 2785 n. 16].
>
> The enabling acts of the Rules of Procedure, the Rules of Evidence, and the Sentencing Guidelines do not provide that Congress could unilaterally veto them. Rather, the statutes gave Congress the opportunity to review the Rules and the Guidelines before they became effective and to pass legislation barring their effectiveness if they were

found objectionable. *Chadha*, 462 U.S. at 935 n. 8 [103 S.Ct. at 2776 n. 8]. And of course any legislation barring their effectiveness or altering them would have to be presented to the President. "This technique was used by Congress when it acted in 1973 to stay, and ultimately to revise, the proposed Rules of Evidence." *Id.* There is no violation of the Presentment Clauses under this type of statutory scheme because Congress does not retain any unilateral veto power. Any changes Congress wishes to make in the rules promulgated pursuant to the delegated authority must also be presented to the President.

*United States v. Smith*, 713 F.Supp. 1315, 1318–19 (D.Minn.1989) (parallel citations omitted). This reasoning is persuasive and we adopt it. Congressional silence during the six month "examine and consider" period is not legislative in character and effect. Therefore, we hold that the Guidelines were not enacted in violation of the presentment clauses. Our position is consistent with *United States v. Litteral*, 910 F.2d 547 (9th Cir.1990)

AFFIRMED.