*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0110P (6th Cir.)
File Name: 00a0110p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee,*<br><br>*v.*<br><br>COURTNEY BUTLER (98-5552)<br>and JULIUS RETIC (98-5554),<br>*Defendants-Appellants.* | Nos. 98-5552/5554 |

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 97-20030—Julia S. Gibbons, Chief District Judge.

Argued and Submitted: June 18, 1999

Decided and Filed: March 29, 2000

Before: JONES, COLE, and CLAY, Circuit Judges.

———————

## COUNSEL

**ARGUED:** Stephen R. Leffler, Memphis, Tennessee, for Appellant. Tony R. Arvin, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** Randall P. Salky, THE LAW OFFICE OF RANDALL SALKY, Memphis, Tennessee, Stephen R. Leffler, Memphis, Tennessee, for Appellants. Tony R. Arvin,

1

ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

CLAY, J., announced the judgment of the court and delivered an opinion, in which JONES and COLE, JJ., concurred except as to Part II.B.1.  JONES, J. (pp. 19-23), delivered a separate opinion, in which COLE, J. concurred, which constitutes the opinion of the court on the issue addressed in Part II.B.1.

———————————

**OPINION**

———————————

CLAY, Circuit Judge.  Defendant Courtney Butler appeals from his judgment of conviction and sentence to 235 months of imprisonment for his commission of armed bank robbery in violation of 18 U.S.C. § 2113 and 18 U.S.C. § 2. Defendant Julius Retic appeals from his judgment of conviction and sentence to 120 months of imprisonment for his commission of armed bank robbery in violation of 18 U.S.C. § 2113 and 18 U.S.C. § 2, and for using and carrying a firearm during and in relation to a crime in violation of 18 U.S.C. § 924(c).  For the reasons below, we **AFFIRM** the judgment of the district court as to Butler, but **VACATE** Retic's sentence and **REMAND** his case for resentencing.

**I.**

On February 19, 1997, a federal grand jury sitting in the Western District of Tennessee returned an indictment charging Courtney Butler and Julius Retic, along with three other individuals, with twelve counts of criminal activity. The relevant facts surrounding their separate offenses and their respective sentencings are as follows.

beyond the initial directive, we believe the original twenty-one year old age limit is sufficiently clear to overcome an argument from silence.

Our hesitance to infer too much from mere "silence" is driven by our concern that doing so would lead courts wholly to abandon their role of assessing whether enacted guidelines comport with Congressional intent.  Indeed, Congress "can revoke or amend any or all the Guidelines as it sees fit either within the 180-day waiting period . . . or at any time." *Mistretta*, 488 U.S. at 393-94.  All proposed guidelines are thus subject to review and potential rejection by Congress, and all enacted guidelines have theoretically survived that potential rejection. Heeding "silence" would thus dictate that all enacted guidelines inherently satisfied Congressional intent, and would eliminate our vital role—described in *LaBonte* and other cases—of squaring the enacted guideline with the original statutory language.  *See* 520 U.S. at 757. Indeed, an Eighth Circuit panel has already taken this dramatic step, concluding (erroneously, we believe) that "[g]iven Congress's supervisory role, the Sentencing Commission's formulation of the Guidelines is not subject to judicial review unless the Commission oversteps constitutional bounds." *United States v. Vincent*, 167 F.3d 428, 431 (8th Cir. 1999).  To the contrary, we believe appellate courts must continue to "hold[] the Commission accountable as an agency of limited powers." Daniel J. Freed, *Federal Sentencing in the Wake of the Guidelines: Unacceptable Limits on the Discretion of Sentencers*, 101 Yale L.J. 1681, 1748 (1992).

We conclude that U.S.S.G. § 3B1.4 is in conflict with a clear Congressional directive.  In addition to the reasons articulated by Judge Clay in II.B.2, we believe that Retic's sentence must be vacated and the case remanded for imposition of a new sentence that is in accordance with the directive's age limitation.

behavior,[1] taking the adult-defendant's and the accomplice-minor's relative ages into consideration is hardly a novel concept. *Cf.* MODEL PENAL CODE § 213.3(1)(a) (1962); CAL. PENAL CODE 261.5(d) (1999) ("Any person 21 years of age or older who engages in an act of unlawful sexual intercourse with a minor under 16 years of age is guilty of either a misdemeanor or a felony . . ."). This is precisely the bright-line role which the age limit played in the directive at issue. We therefore find that the limit was a core aspect of that directive, and its wholesale elimination comprised much more than a "slightly broader" application.

Finally, we respectfully disagree with our distinguished colleague's utilization of a "Congressional silence" theory to conclude that Congress indeed approved of the Commission's amendment. He points to the six-month review period in which Congress can accept or reject Commission guidelines, and to the fact that "Congress ultimately failed to express disagreement with expansion of the enhancement to" include defendants under twenty one, to conclude that the amendment was "an appropriate reflection of [Congressional] policy." *Ante* at __. *See also United States v. Munoz-Cerna*, 47 F.3d 207, 212 (7th Cir. 1995) (reading Congressional intent by noting that "Congress had the opportunity to accept, reject, or modify the guideline provision" yet "decided to allow the Commission's handiwork to take effect"). For several reasons, we are not persuaded by this analysis.

As the Supreme Court stated in another Sentencing Guideline case, "[n]ot every silence is pregnant." *Burns v. United States*, 501 U.S. 129, 136 (1991) (citation omitted). The Court in *Burns* counseled that silence should not be "credited when it is contrary to all other textual and contextual evidence of congressional intent." *Id.* Although there is admittedly little evidence of that legislative intent

---

[1] Indeed, Congress asked the Commission to take into account the "possible relevance of the proximity in age between the offender and the minor(s) involved in the offense." Pub. L. No. 103-322, § 140008, 108 Stat. 2033 (1994).

## A. BUTLER

On May 29, 1996, Butler and Julian Shelton robbed the Volunteer Bank in Henning, Tennessee. During the robbery, Butler wore a wig covered with a hat and Shelton wore safety glasses and a hat, while Shelton was armed with a hand gun. Together they stole a total of $12,269 from the bank. When the federal grand jury handed down its twelve-count indictment, it charged Butler in Count 5 with aiding and abetting armed bank robbery in violation of 18 U.S.C. § 2113 and 18 U.S.C. § 2 in connection with his participation in this robbery at Volunteer Bank. The indictment also charged Butler in Counts 1 through 4, Counts 6 through 8, and Counts 11 and 12 with numerous other bank robberies and the use of firearms during those offenses. On March 5, 1998, Butler pleaded guilty to Count 5 of the indictment pursuant to a plea agreement in which the government dismissed the remaining charges against him.

At sentencing on April 3, 1998, the district court determined that Butler had three convictions that qualified him for career offender status under § 4B1.1 of the Sentencing Guidelines. Specifically, the district court took note of a 1990 conviction for conspiracy to sell cocaine, a 1994 conviction for delivery of under a half-gram of cocaine, and a 1994 conviction for aggravated burglary. Additionally, the district court denied Butler's request for a downward departure. The district court enhanced Butler's criminal history category accordingly, and sentenced Butler to 235 months of imprisonment, 3 years of supervised release, and payment of restitution in the amount of $6,134.50, or one-half the loss to the bank. Butler filed a timely notice of appeal to this Court on April 14, 1998.

## B. RETIC

On July 19, 1996, at the age of twenty, Retic robbed the Munford Union Bank in Atoka, Tennessee along with Curtis Harden, who was seventeen years of age at the time. Butler was waiting nearby in a getaway vehicle. During the robbery, which took place in the middle of the afternoon, Retic put a

handgun to the head of a customer service representative, instructed her not to push the alarm button, and told her that if she moved, he would "cap" her. Harden repeatedly asked Retic not to shoot the representative, and Retic complied. Harden jumped the teller counter and removed money. During the robbery, Retic saw a bank teller motion to her husband and children, who were about to enter the bank to pick her up, not to enter. Retic ordered the husband and children into the bank. As Retic and Harden were leaving the bank, they encountered another customer. Retic grabbed him, pointed the gun at him and ordered him into the bank. Ultimately, Retic and Harden left the bank with $16,330. Later that evening, local police picked up Harden walking along the highway. Harden later made an admission identifying Butler as the individual who planned the robbery and Retic as the individual who accompanied him into the bank.

In connection with this incident, the indictment charged Retic in Count 11 with armed bank robbery in violation of 18 U.S.C. § 2113 and 18 U.S.C. § 2, and in Count 12 with using and carrying a firearm during and in relation to that bank robbery in violation of 18 U.S.C. § 924(c). On July 16, 1997, Retic pleaded guilty to Count 11, and on November 14, 1997, he pleaded guilty to Count 12. At a sentencing hearing held on April 3, 1998, Retic received a reduction in his sentence pursuant to § 5K1.1 of the Sentencing Guidelines for acceptance of responsibility. However, the district court enhanced Retic's offense level by two levels pursuant to § 3B1.4 of the Guidelines on the grounds that he had encouraged a minor, Harden, to participate in the crime. The district court ultimately sentenced Retic to sixty months of imprisonment for Count 11 and sixty months of imprisonment for Count 12, to be served consecutively. Retic filed a timely notice of appeal to this Court on April 15, 1998.

## II.

Before this Court, both Butler and Retic challenge only their sentences, and not their underlying convictions. We

Commission to "promulgate guidelines or amend existing guidelines to provide that a defendant *21 years of age or older* who has been convicted of an offense shall receive an appropriate sentence enhancement if the defendant involved a minor in the commission of the offense." Pub. L. No. 103-322, § 140008, 108 Stat. 2033 (1994) (emphasis added). However, in issuing § 3B1.4, the Commission simply removed the age restriction. *See* U.S.S.G. § 3B1.4. Looking at the face of both the directive and the guideline, we are not convinced that the Commission's interpretation of the age restriction is "sufficiently reasonable." To the contrary, the guideline's "interpretation" was a direct overruling of an explicit Congressional declaration because it eliminated the age limit, lock, stock and barrel.

The Government's feeble response to this facial conflict is that the Commission's interpretation simply "implemented Congress's directive in a slightly broader fashion." Gov't Br. at 9. Its sole evidence is the Commission's own statement that it was implementing the directive in "slightly broader form." U.S. Sentencing Commission Guideline Manual, Appendix C, Amendment 527 (1997). This argument is unpersuasive for two reasons. First, reflexively relying on the commission's characterization of its own amendment would abandon our judicial role in "determining whether [the] [a]mendment accurately reflects Congress' intent." *LaBonte*, 520 U.S. at 757. More importantly, both the Commission's characterization and the Government's contention are specious. Eliminating the minimum age requirement is far more dramatic than introducing a "slightly broader form" of the original directive. As this case demonstrates, without the age limit that Congress originally authorized, the guideline introduces a whole host of situations where defendants under age twenty one can receive enhancements for engaging in criminal activities with youths of similar age, or perhaps even older than the defendants themselves. To resolve situations such as this, which do not present the underlying concern that the existence of an age differential allows an older, adult party to influence a minor to engage in wrongful or dangerous

is consistent with the rationale for why we generally do not entertain issues not raised below—that it is "essential . . . that parties . . . have the opportunity to offer all the evidence they believe relevant to the issues." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976) (internal quotations and citation omitted). When a new argument presents a question of pure law, neither party has been denied the opportunity to offer relevant evidence in making its case. To the contrary, as has occurred in the case *sub judice*, both sides have had a full "opportunity to present whatever legal arguments [they] may have" on this particular issue. *Id*.

Not only is Retic's argument properly before this Court, it is persuasive. Although Congress has delegated "'significant discretion in formulating guidelines'" to the Commission, the Commission still "must bow to the specific directives of Congress." *United States v. LaBonte*, 520 U.S. 751, 757 (1997) (quoting *Mistretta v. United States*, 488 U.S. 361, 377 (1989)). In ascertaining whether the Commission has properly interpreted a directive, courts therefore "defer to [the Commission's] interpretation as long as it is 'sufficiently reasonable' in light of the Congressional directive." *United States v. Williams*, 53 F.3d 769, 772 (6th Cir. 1995) (quoting *United States v. Kennedy*, 32 F.3d 876, 889 (4th Cir. 1994)); *see also United States v. Nottingham*, 898 F.2d 390, 393 (3d Cir. 1990) ("To the extent that the enabling legislation contains specific direction, the guidelines must comport with that direction.") When the Commission's interpretation, as embodied in a guideline, does not square with clear Congressional intent, courts will not apply that guideline. *See United States v. Gaines*, 122 F.3d 324, 330 (6th Cir. 1997) ("When Congress and the Sentencing Commission disagree on matters of sentencing policy, Congress trumps."); *United States v. Branham*, 97 F.3d 835 (6th Cir. 1996) (holding that the Commission contravened a Congressional directive).

We can not conceive of a clearer example than that presented here where the Commission has so flatly ignored a clear Congressional directive. The Violent Crime Control and Law Enforcement Act of 1994 directed the Sentencing

review the district court's legal conclusions regarding the Sentencing Guidelines *de novo*. *See United States v. Garner,* 940 F.2d 172, 174 (6th Cir. 1991). Moreover, we review a district court's factual findings in applying the Sentencing Guidelines for clear error. *See United States v. Latouf*, 132 F.3d 320, 331 (6th Cir. 1997).

## A.

Butler argues that the district court erred by sentencing him as a career offender pursuant to the Sentencing Guidelines. The Guidelines provide that a defendant is a career offender if (1) he was at least eighteen when he committed the offense of conviction; (2) the offense of conviction is a felony that is a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of crimes of violence or controlled substance offenses. *See* USSG § 4B1.1. The Guidelines further provide that a "controlled substance offense" includes any felony offense, state or federal, that involves the distribution of a controlled substance. *See* USSG § 4B1.2(b). Butler argues that of the three convictions the district court cited in support of its § 4B1.1 enhancement, the two "controlled substance offenses" were actually simple possession offenses and the third, a conviction for aggravated burglary, was not a crime of violence. Therefore, Butler argues, his prior convictions did not qualify him as a career offender. Butler's arguments are in vain.

In determining whether a particular offense constitutes a "controlled substance offense" or a "crime of violence" under the Guidelines, this Court employs a categorical approach "limited to an examination of the fact of conviction and the statutory definition of the predicate offense." *United States v. Arnold,* 58 F.3d 1117, 1121 (6th Cir. 1995). Under this approach, "'it is not only impermissible, but pointless, for the court to look through to the defendant's actual criminal conduct. . . .'" *Id.* (quoting *United States v. John,* 936 F.2d 764, 767 (3d Cir. 1991)). Indeed, the categorical approach eliminates "'the practical difficulties and potential unfairness

of a factual approach' to each prior conviction." *See United States v. Kaplansky*, 42 F.3d 320, 322 (6th Cir. 1994) (quoting *Taylor v. United States*, 495 U.S. 575, 600-02 (1990)).

Significantly, Butler does not contest the fact of his conviction for the three cited offenses, and does not contest that the statutes under which he was convicted are statutes that criminalize "controlled substance offenses" and "crimes of violence." Rather, he argues that this Court should eschew the categorical approach described above by looking at the substantive facts behind each of those offenses. Because it is improper for a court to go beyond the fact of conviction and the definitions of the statutes under which Butler was convicted to determine whether he qualified as a career offender, the district court did not err in enhancing Butler's sentence under § 4B1.1 of the Guidelines.

Finally, although Butler argues that the district court should have departed downwards in sentencing him, this claim is unreviewable. The Sentencing Reform Act of 1984 ("Act") provides for limited appellate review of sentences for federal offenses. *See Williams v. United States*, 503 U.S. 193, 199 (1992). Under the Act, a defendant may only appeal his sentence if it (1) was imposed in violation of law; (2) reflects an incorrect application of the Sentencing Guidelines; (3) is greater than the sentence specified in the applicable Guidelines range; or (4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable. *See* 18 U.S.C. § 3742(a) (1998). Generally, under § 3742, a defendant may appeal if the district court departs upward from the Guideline range, and the government may appeal if the district court departs downwards. *See Williams*, 503 U.S. at 199. We have consistently held that the decision by a district court not to depart downwards from the Guidelines is not reviewable on appeal unless the record reflects that the district court was not aware of or did not understand its discretion to make such a departure. *See United States v. Landers*, 39 F.3d 643, 649 (6th Cir. 1994).

_____

## CONCURRENCE

_____

NATHANIEL R. JONES, Circuit Judge, concurring, with COLE, J., joining.

We concur in the judgment announced by Judge Clay, and with most of Judge Clay's well-reasoned opinion. Nevertheless, we believe defendant Retic, in addition to prevailing for the reasons stated in II.B.2, correctly asserts that the United States Sentencing Commission failed to comport with a clear Congressional directive when it eliminated the requirement that the defendant be at least twenty-one years old to be subject to enhancement under U.S.S.G. §3B1.4. We therefore respectfully disagree with regard to the analysis in II.B.1.

As a preliminary matter, we are untroubled by the fact that Retic did not make this particular legal argument below. Before the district court, Retic clearly challenged the application of U.S.S.G. § 3B1.4 to enhance his sentence, J.A. at 180-81; he therefore complied with this Court's requirement that a defendant object at the district court in order to avoid waiving that objection on appeal. *See United States v. Jarman*, 144 F.3d 912, 915 (6th Cir. 1998). The additional argument he now makes in support of that objection is one of pure law. "The question is simply the proper interpretation and application of the [relevant] statute," requiring "no new or amplified factual determination." *Frederick Steel Co. v. Commissioner of Internal Revenue*, 375 F.2d 351, 355 (6th Cir. 1967) (internal quotations and citation omitted). As such, the fact that the argument was not raised below is immaterial. *See id.*; *see also Hutton v. United States*, 501 F.2d 1055, 1062-63 & 1063 n.15 (6th Cir. 1974) (recognizing that *Frederick Steel Co.* articulated an exception to the general rule that an appellate court cannot entertain an argument based on a theory not raised below). This exception

sentence of Retic and **REMAND** his case to the district court for resentencing.

Although Butler contends that the district court should have granted him a downward departure on the grounds that he had a diminished capacity due to alcohol and drug abuse and because he had a traumatic childhood, he does not argue – likely because he cannot – that the district court did not understand its ability to make such a departure. Indeed, the district court stated:

> There is really not anything factually about this case that would warrant a downward departure. The defendant's family circumstances and his background are not unusual. They are relatively typical of people engaged in criminal conduct. There is no indication that his drug or alcohol use in any way constituted diminished capacity as contended in the objections. There is just nothing in this case that would amount to either an appropriate legal basis for a downward departure or that would amount to an appropriate legal basis for a downward departure or that would factually amount to an appropriate reason to go below the guideline range.

(J.A. at 113.) It seems clear that the district court recognized its power to depart downwards but merely exercised its discretion not to do so. Consequently, the district court's failure to grant Butler a downward departure is not reviewable. Because Butler's arguments are meritless, his sentence is affirmed.

### B.

The arguments Retic makes before this Court, both of which attack the decision of the district court to enhance his offense level at sentencing pursuant to § 3B1.4 of the Guidelines are viewed differently. Section 3B1.4 provides that "[i]f the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense," a district court may increase the defendant's offense level by two levels. USSG § 3B1.4 (1998). In his challenge to the § 3B1.4 enhancement, Retic argues, for the first time before this Court, that to the extent the enhancement applies to

defendants of any age, the provision goes beyond the scope of the mandate Congress granted the Sentencing Commission ("Commission"). He further argues that even if § 3B1.4 is valid, the district court should not have applied it in his case because he did not use or attempt to use Harden during the bank robbery. Retic does not succeed with his argument that § 3B1.4 is generally invalid; however, his argument that the provision does not apply to his case is meritorious.

### 1.

Congress enacted the precursor to § 3B1.4 when it passed the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 140008, 108 Stat. 2033 (1994). This enabling provision directed the Commission to "promulgate guidelines or amend existing guidelines to provide that a defendant 21 years of age or older who has been convicted of an offense shall receive an appropriate sentence enhancement if the defendant involved a minor in the commission of the offense." *Id.* Although the sentence enhancement created by Congress included language restricting its application to defendants 21 years of age or older, in adopting § 3B1.4, the Commission dropped the age restriction, rendering the sentence enhancement applicable to defendants of all ages. Retic, who was 20 years old when he committed this crime, therefore argues that § 3B1.4 goes beyond the limited authorization Congress granted, and that as a defendant under the age of 21 at the time of the offense, he should not be subject to a sentence enhancement for involving a minor in his crime. Although this argument carries some facial appeal, it lacks merit.

In 1984, Congress created the Commission, charging it with "establish[ing] sentencing policies and practices for the Federal criminal justice system." 28 U.S.C. § 991 (1985). Since this delegation of power was constitutional, sentencing guidelines promulgated by the Commission now bind the federal courts. *See Mistretta v. United States,* 488 U.S. 361, 391 (1989). Although Congress legitimately granted the Commission "significant discretion in formulating

Consequently, the district court misapplied the provision. The district court found that Retic and Harden were partners in crime who worked together to rob the Munford Union Bank, but failed to find that Retic acted affirmatively to involve Harden in the armed bank robbery beyond merely acting as his partner. The district court did not find that Retic directed, commanded, intimidated, counseled, trained, procured, recruited, or solicited Harden's participation in the bank robbery.[3] Thus, the district court concluded, on the basis of evidence showing that Harden participated in the robbery with Retic and on the inference that they "encouraged" one another, that Retic "used" Harden. Because the term "use" requires a showing of more than a mere criminal partnership, the district court erred in finding that Retic used a minor in committing his crime and in enhancing Retic's sentence by two levels pursuant to § 3B1.4. Accordingly, Retic's case is remanded to the district court for resentencing.

### III.

As previously explained, the district court did not err in sentencing Butler as a career offender pursuant to § 4B1.1 of the Guidelines, and was aware of its authority to depart downwards in sentencing Butler, but simply exercised its discretion not to do so. However, because a defendant must do more than merely act as a partner with a minor in crime, in order to "use" a minor in crime under § 3B1.4, this enhancement does not apply to Retic and his sentence was erroneously imposed. Accordingly, we **AFFIRM** the judgment of the district court as to Butler, but **VACATE** the

---

[3]The facts, at best, show only that Retic and Harden possessed equal authority in their commission of the crime. As Retic points out, it was Harden who directed Retic not to shoot the customer service representative at the bank. Moreover, when asked about the crime, Harden identified Butler, and not Retic, as the individual who planned the robbery. Although it therefore seems more likely that Butler "directed" a minor to commit a crime, the district court did not have the opportunity to make such a finding because the government dropped its charge against Butler in connection with this particular robbery.

the offender and the minor(s) involved in the offense." § 140008(b) (emphasis added). Congress' inclusion of these considerations indicates that to deserve § 3B1.4 enhancement, one must do more than simply participate in crime with a minor. If the contrary were true, the relative ages of the offender and the minor would be irrelevant; by deeming age relevant, Congress likely imagined an offender who actually exercised some control or took some affirmative role in involving the minor.

Finally, it is instructive to consider the analogous statutory provision criminalizing the use of juveniles in drug trafficking, which makes it unlawful for an adult to "knowingly and intentionally employ, hire, use, persuade, induce, entice, or coerce, a person under eighteen years of age" to violate federal drug laws. 21 U.S.C. § 861 (1998). Indeed, in giving the Commission the authority to create § 3B1.4, Congress made indirect reference to this statute when it observed that the Guidelines set forth a two-level sentence enhancement for crimes involving a minor in a drug trafficking offense. *See* Violent Crime Control and Law Enforcement Act of 1994, § 140008(b)(3); USSG § 2D1.1 (noting its application to § 861 convictions). Courts interpreting § 861 have observed that where the evidence shows a juvenile was involved in the defendant's drug operation, the government must produce additional evidence showing that the defendant was responsible for some affirmative or active "use" of the juvenile. *See, e.g., United States v. McDonald,* 877 F.2d 91, 93 (D.C. Cir. 1989). In analyzing the sufficiency of evidence supporting a § 861 conviction, we have looked for proof of the juvenile's subservience to the defendant in the drug operation in response to the claim that the juvenile was an independent drug dealer over whom the defendant exerted no influence. *See United States v. Segines,* No. 95-3534, 1996 WL 287254, at *8 (6th Cir. May 8, 1996) (unpublished). Thus, it appears that in the criminal context, "using" a minor to carry out criminal activity entails more than being the equal partner of that minor in committing a crime.

guidelines," *id.* at 377, the discretion of the Commission "must bow to the specific directives of Congress." *United States v. LaBonte,* 520 U.S. 751, 757 (1997). When the Commission seeks to amend a guideline, it must submit a proposed amendment to Congress, along with reasons explaining the amendment, and must give Congress 180 days, or roughly six months, to modify or disapprove the amendment. *See* 28 U.S.C. § 994(p) (1994). Under this "report and wait" provision, if Congress fails to act, the proposed amendment will take effect. *See id.* Taking this process into account, this Court has recognized that "[w]hen Congress and the Commission disagree on matters of sentencing policy, Congress trumps. . . . Where the Guidelines and a statute conflict, the statute (an act of Congress) controls." *United States v. Gaines,* 122 F.3d 324, 330 (6th Cir. 1997).

To determine whether a guideline adopted by the Commission is at odds with the directives of Congress and must therefore give way, the language of the statute is looked at first. *See LaBonte,* 520 U.S. at 757. In the statute enabling § 3B1.4, Congress adopted the following language:

SEC. 140008.    SOLICITATION OF MINOR TO COMMIT CRIME

(a) Directive to Sentencing Commission.
(1) The United States Sentencing Commission shall promulgate guidelines or amend existing guidelines to provide that a defendant 21 years of age or older who has been convicted of an offense shall receive an appropriate sentence enhancement if the defendant involved a minor in the commission of the offense.
(2) The Commission shall provide that the guideline enhancement promulgated pursuant to paragraph (1) shall apply for any offense in relation to which the defendant has solicited, procured, recruited, counseled, encouraged, trained, directed, commanded, intimidated, or otherwise used or attempted to use any person less than 18 years of

age with the intent that the minor would commit a Federal offense.

Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 140008, 108 Stat. 2033 (1994). At first blush, it appears, as Retic alleges, that Congress intended—and provided in unambiguous terms—for sentence enhancement for solicitation of a minor to commit crime only for defendants age 21 and older. A clearer expression of congressional intent is unimaginable.

However, Congress' expression of intent as to § 3B1.4 did not begin and end with its enactment of § 140008. When the Commission drafted § 3B1.4 to reflect the congressional directive set forth in § 140008, it did so by proposing Amendment 527 to the Sentencing Guidelines. *See* USSG App. C. (1998). In accordance with statutory procedures regarding the proposal of amendments to the Guidelines, the Commission then submitted Amendment 527, along with many other proposed amendments, to Congress on May 1, 1995, and specified an effective date of November 1, 1995. *See* Amendments to the Sentencing Guidelines for the United States Courts, 60 Fed. Reg. 25074, 25086 (May 10, 1995). Significantly, in submitting Amendment 527, the Commission stated as the reason for its proposal that the amendment "implements the directive in Section 140008 of the Violent Crime Control and Law Enforcement Act of 1994 (pertaining to the use of a minor in the commission of an offense) in a slightly broader form." 60 Fed. Reg. at 25086. On October 30, 1995, Congress considered and rejected some of the amendments proposed on May 1, 1995, *see* Pub. L. No. 104-38, 109 Stat. 334 (1995), but did not act to modify or disapprove Amendment 527.[1]    Thus, Amendment 527, codified as § 3B1.4, became effective on November 1, 1995. *See* USSG App. C.

---

[1]For example, Congress disapproved of a proposed amendment that would have eliminated the 100:1 sentencing ratio that treats one who deals in a given quantity of crack cocaine the same as it treats one who deals in 100 times as much powder cocaine. *See Gaines,* 122 F.3d at 327.

adjustments entitled "Role in the Offense." USSG Ch. 3, Pt.B. The introductory commentary to this part of the Guidelines states that it sets forth "adjustments to the offense level based upon the role the defendant played in committing the offense." USSG Ch. 3, Pt.B, intro. comment. Under the generous construction adopted by the district court, any defendant who partnered with a minor in a crime would be subject to a two-level enhancement, creating, in effect, a "strict liability enhancement." However, this view conflicts with the notion that the enhancement is reserved for defendants who play a particular role in the offense. Indeed, if numerous adult defendants participated in a crime along with a minor, every single one of the adult defendants would be subject to the two-level enhancement, regardless of the roles they played in involving the minor in the crime. Such a result would ostensibly render the characterization of § 3B1.4 as a "role in the offense" adjustment a misnomer.

Moreover, sentencing guidelines are to be interpreted and applied so that they are consistent with the statute that authorized them. *See Stinson v. United States,* 508 U.S. 36, 45 (1993). Congress labeled the provision enabling § 3B1.4 "Solicitation of a Minor to Commit Crime." Violent Crime Control and Law Enforcement Act of 1994, § 140008. The dictionary defines "solicitation" as "[a]sking; enticing; urgent request. The inchoate offense of asking someone to engage in illegal conduct." Black's Law Dictionary 1392 (6th ed. 1990). As one could not passively solicit the participation of a minor in crime, this suggests that the enhancement should apply when a defendant takes affirmative acts to involve a minor. Moreover, while setting forth the suggested definitions for the term "use" adopted in Application Note 1, Section 140008 also identified a number of "relevant considerations" that indicate Congress did not intend to create "strict liability enhancement" for anyone who merely participates in crime with a minor. Violent Crime Control and Law Enforcement Act of 1994, § 140008. For example, Congress instructed the Commission to consider "the severity of the crime that the defendant *intended* the minor to commit" and "the possible relevance of the proximity in age between

within the guideline range, although this is certainly not the clear -- it's a fairly close issue based on some of the other language of the application note.

(J.A. at 70-71.)  Our review of § 3B1.4 leads us to disagree with the district court's analysis.

It was proper for the district court to take a plain language approach in its interpretation of § 3B1.4, because courts must treat the sentencing guidelines "as if they were a statute" and follow "the clear, unambiguous language if there is no manifestation of a contrary intent."  *United States v. Lewis,* 900 F.2d 877, 881 (6th Cir. 1990); *see also Lopez-Lopez,* 1998 WL 788875, at *1 (holding that courts may use the "common meaning of 'use'" in applying § 3B1.4).  However, the district court relied heavily on a definition for the term "encourage" and not for the term "use," and even then chose not to rely upon the definition of "encourage" set forth specifically for the criminal legal context, namely "to instigate."  Black's Law Dictionary 527 (6th ed. 1990).  The dictionary defines "use" as "[t]o make use of; to convert to one's service; to employ; to avail oneself of; to utilize; to carry out a purpose or action by means of; to put into action or service, especially to attain an end."  Black's Law Dictionary 1541 (6th ed. 1990).  A consideration of the definitions of "use" supports the notion that § 3B1.4 would require more affirmative action on the part of a defendant. *See Bailey v. United States,* 516 U.S. 137, 145 (1995) (finding that "[t]hese various definitions of 'use' imply action and implementation"); *see also LeFave,* 1998 WL 10362, at *1 (observing that although mere awareness of a minor's involvement would not warrant § 3B1.4 enhancement, active payment by a defendant to a minor for illegal work would merit such enhancement).

In an effort to determine the true meaning of § 3B1.4, the language and design of the statute as a whole as well as the specific provision at issue must be considered.  *See KMart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291 (1988).  Section 3B1.4 falls under a category of sentencing guideline

Against this historical backdrop, Retic essentially invites the Court to hold that in spite of its inaction when faced with Amendment 527, Congress intended, as it originally stated in § 140008, that sentence enhancements for the involvement of minors in crime should apply only to defendants who are 21 years of age and older.  Given the context, Retic's invitation cannot be accepted.  The provision that allowed Congress six months to review and displace Amendment 527 resembles the "report and wait" provision of the enabling acts for the Federal Rules of Civil Procedure and the Federal Rules of Evidence.  *See United States v. Scampini,* 911 F.2d 350, 353 (9th Cir. 1990) (quoting *United States v. Smith,* 713 F. Supp. 1315, 1318-19 (D. Minn. 1989)).  The Supreme Court has long affirmed the validity of "report and wait" procedures and the significance of congressional inaction under such procedures, observing in a case challenging the Federal Rules of Civil Procedure that:

> The value of the reservation of the power to examine proposed rules, laws and regulations before they become effective is well understood by Congress.  It is frequently, as here, employed to make sure that the action under the delegation squares with the Congressional purpose. Evidently the Congress felt the rule was within the ambit of the statute as no effort was made to eliminate it from the proposed body of rules, although . . . [t]he Preliminary Draft of the rules called attention to the contrary practice . . ., as did the Report of the Advisory Committee and the Notes prepared by the Committee to accompany the final version of the rules. That no adverse action was taken by Congress indicates, at least, that no transgression of legislative policy was found.  We conclude that the rules under attack are within the authority granted.

*Sibbach v. Wilson & Co., Inc.,* 312 U.S. 1, 15 (1941).  The Court has continued to find valid the enactment of rules through "report and wait" provisions.  *See, e.g., Alaska Airlines, Inc. v. Brock,* 480 U.S. 678, 690 & n.12 (1987); *INS v. Chadha,* 462 U.S. 919, 935 & n.9 (1983).

These cases instruct that Congress reserved for itself the opportunity to review proposed amendments to guidelines through a "report and wait" provision, and that by failing to act to modify or disapprove Amendment 527 even when notified that it was different from the directive enacted in § 140008, Congress, in effect, approved of Amendment 527 as an appropriate reflection of its policy on the sentencing of those who involved minors in their crimes. *Cf. United States v. Munoz-Realpe,* 21 F.3d 375, 377 (11th Cir. 1994) (concluding that by allowing an amendment to the Guidelines to take effect, Congress gives its "imprimatur" to the new guideline). Thus, although the initial intent of Congress would have been at odds with § 3B1.4, the history behind the passage of § 3B1.4 compels a finding that the intent of Congress changed. While at first Congress expressly directed the Commission to exclude defendants under the age of 21 from this sentence enhancement, through its inaction under the "report and wait" provision of § 994(p), Congress ultimately failed to express disagreement with expansion of the enhancement to include defendants under the age of 21. This is not the situation in which the intent of Congress and the position adopted by the Sentencing Guidelines are at odds; therefore, the enactment of § 3B1.4 was valid, and the Commission did not overstep the bounds of its authority.

**2.**

Since Retic cannot prevail in his general attack on the validity of § 3B1.4, we turn now to his claim that it was improper for the district court to apply § 3B1.4 given the facts of his case. Specifically, he cites the absence of proof that he used or attempted to use Harden during the bank robbery. In determining whether a defendant "used or attempted to use" a minor so as to warrant a § 3B1.4 enhancement, a sentencing court should bear in mind that "'[u]sed or attempted to use' includes directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." USSG § 3B1.4, comment. (n.1). This Court has yet to construe the meaning of the term "use" or the phrase "attempted to use" in this context. *See United States v.*

*Harris,* 165 F.3d 1062, 1067 (6th Cir. 1999) (finding § 3B1.4 enhancement proper not because defendant "used" a minor, but because the minor "assisted" defendant in avoiding detection of the offense). Since the provision is fairly new,[2] very few courts have interpreted the "use" or "attempted to use" aspect of § 3B1.4. *See, e.g., United States v. Benjamin*, 116 F.3d 1204, 1206 (7th Cir. 1997); *United States v. Lopez-Lopez,* No. 98-50030, 1998 WL 788875, at *1 (9th Cir. Nov. 5, 1998) (unpublished); *United States v. LeFave,* No. 96-50618, 1998 WL 10362, at *1 (9th Cir. Jan. 13, 1998) (unpublished).

Here, the district court followed a path somewhat similar to that taken by the court in *Benjamin,* where the United States Court of Appeals for the Seventh Circuit affirmed an enhancement pursuant to § 3B1.4 where the defendant and the minor were "partner[s] in crime" and co-conspirators. 116 F.3d at 1206. While conceding that the list of words set forth in Application Note 1 of the Commentary to the provision "would connote some pressure or affirmative action," the district court placed emphasis on the definition of the term "encouraged" as set forth in Black's Law Dictionary. That publication defines "encourage" as "[i]n criminal law, to instigate; to incite to action; to give courage to; to inspirit; to embolden; to raise confidence; to make confident; to help; to forward; to advise." Black's Law Dictionary 527 (6th ed. 1990). The district court then found that:

> Mr. Retic and Mr. Harden worked together to commit the crime. They helped one another, and they encouraged one another simply by their own participation. The presence and involvement of each was an emboldening factor to the other, and so I would agree that there is not any indication that Mr. Retic, as an adult, was pressuring Mr. Harden as a minor . . . he did use a minor in the sense that I have described, and I think that does fall

---

[2] The version of § 3B1.4 applied by the district court became effective on November 1, 1995. *See* USSG. App. C.