**UNITED STATES of America.**
**Plaintiff–Appellee,**

v.

**Audie Denver WHEELER.**
**Defendant–Appellant.**

No. 01–1807.

United States Court of Appeals,
Sixth Circuit.

May 29, 2003.

BEFORE: SUHRHEINRICH and COLE, Circuit Judges, and CARR, District Judge.*

## OPINION

COLE, Circuit Judge.

Defendant–Appellant Audie Denver Wheeler was convicted by a jury of conspiracy to distribute controlled substances,

possession with intent to distribute marijuana, and being a felon in possession of firearms and ammunition. He was sentenced to a term of imprisonment of 365 months. Wheeler appeals his conviction for conspiracy to distribute marijuana. He argues that the district court erred in allowing Plaintiff–Appellee United States to introduce evidence of Wheeler's gang involvement and his ownership of pit bull dogs. He also argues that his counsel rendered constitutionally ineffective assistance. Additionally, Wheeler appeals his sentencing enhancements for being found an organizer or leader, for the use of a minor to commit a crime, and for obstructing or impeding the administration of justice. For the reasons set forth below, we **AFFIRM** the judgment of conviction and sentence of the district court.

## I.  BACKGROUND

On October 4, 2000, a grand jury issued a Fifth Superseding Indictment charging Wheeler [1] with nine counts:

Count 1:  Conspiracy to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 846 and 841(a)(1)

Count 2:  Possession with Intent to Distribute Marijuana in violation of 21 U.S.C. § 841(a)(1)

Count 3, 5, 6, 7:  Felon in Possession of Firearm in violation of 18 U.S.C. § 922(g)

Count 8:  Felon in Possession of Ammunition in violation of 18 U.S.C. § 922(g)

Count 9:  Witness Tampering in violation of 18 U.S.C. § 1512(b)

---

* The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

1.  Wheeler's girlfriend, Tiara Rae Tatro, was named in the Indictment on Counts One, Two, Three, Four, and Eight. She pleaded guilty to Count Four, Possession of a Stolen Firearm in violation of 18 U.S.C. § 922(j). Wesley Reade Haley was named in Count Six. He pleaded guilty to Count Six and to Aiding and Abetting.

On October 10, 2000, the Government voluntarily dismissed Count Nine. On October 26, 2000, Wheeler was found guilty as to all Counts except Count Six, of which Wheeler was found not guilty. Regarding Count One, Wheeler was found guilty of conspiracy to distribute marijuana, but not guilty of conspiracy to distribute cocaine. A Presentence Investigation Report ("PSI") was prepared on December 4, 2000 and Wheeler filed objections on January 18, 2001. The PSI was revised on February 12, 2001 and Wheeler's Offense Level was assessed at 36. The district court held two sentencing hearings, on February 23, 2001 and May 24, 2001, in order to hear objections to the PSI and to sentence Wheeler. On May 24, 2001, the district court had an evidentiary hearing regarding the obstruction of justice enhancement and then sentenced Wheeler to a term of imprisonment of 365 months. The court filed a Judgment of Conviction and Sentence on May 29, 2001. Wheeler filed a timely notice of appeal on June 7, 2001.

## II. ANALYSIS

### A. Introduction of Evidence

Wheeler argues that his conviction for conspiracy to distribute marijuana should not be upheld because the district court erred in admitting evidence of Wheeler's gang involvement and ownership of vicious dogs. Wheeler argues that the evidence was inadmissible under Federal Rule of Evidence 404(b). That rule provides that:

> (b) Other Crimes, Wrongs, or Acts.— Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the

accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

FED.R.EVID. 404(b) (2001). Wheeler argues that the evidence's probative value was outweighed by its prejudicial effect.

In *United States v. Mack*, 258 F.3d 548 (6th Cir.2001), we settled a split within the Circuit concerning the proper standard of review for evidentiary rulings. We held that, in light of the Supreme Court's decision in *General Electric Co. v. Joiner*, 522 U.S. 136, 142–43, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997), and our decision in *Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 716 (6th Cir.1999), all evidentiary rulings are to be reviewed for abuse of discretion. *Mack*, 258 F.3d at 553 n. 1. Under that standard, we will not reverse a lower court's evidentiary ruling unless we find that the court has abused its discretion.

### 1. Evidence of gang involvement

Wheeler argues that the district erred in admitting into evidence sheets of paper that contained gang graffiti. The paper was seized on October 1, 1998 when a search warrant was executed at Wheeler's home. During the testimony of Officer Shawn Ellis of the Flint Police Department, the Government sought to admit the paper into evidence, and Ellis testified that the writing on the paper was "gang graffiti." The Government argued at trial that the sheets of paper were relevant to show that Wheeler was involved in a conspiracy to distribute marijuana. The Government also argued that the paper was evidence of Wheeler's knowledge and specific intent rather than as evidence of character, and thus did not fall under FRE 404(b).

The testimony of Ellis was as follows:

Q  All right. And are you familiar with gang—are you familiar with gangs in the Flint area?

A  Somewhat, yes.

Q  All right. Has that become an issue in terms of some of your investigations of narcotics as to what gangs are doing?

A  Yes.

Q  Okay. Is there a specific reference to a group on [exhibit] No. 37?

A  Yes, these is.

Q  Okay. And what is listed on there?

A  It says Spanish Cobra killa [sic]?

. . .

Q  All right. And what are Spanish Cobras?

A  It is a gang, street gang which congregates mainly on the east side of Flint.

Wheeler's attorney objected, arguing that: (1) the evidence of Wheeler's gang involvement was 404(b) material and therefore he needed notice that it would be introduced, and (2) the evidence was prejudicial because it insinuated that Wheeler belonged to a gang. At a side bar during trial, Wheeler's attorney stated that "the focus of my objection is to alleviate any further reference to gangs." The court noted that the Spanish Cobras were "well known here in Flint." The court allowed the admission of the evidence and added that if other matters were to come up regarding Wheeler's alleged association with a gang, objections could be made at that time. The issue of the Spanish Cobras or Wheeler's alleged gang involvement was never brought up again at the trial.

■ The introduction of evidence of Wheeler's gang involvement appears to have no probative value as to the charge of conspiracy to distribute marijuana. The evidence seems to create the inference of Wheeler's involvement in a drug conspira-cy from his association with a notorious gang. Even the court noted that the Spanish Cobras were well known in Flint. Therefore, this testimony would appear to be prejudicial and the district court erred in admitting it.

■ Although we find that the district erred in admitting this evidence, we conclude that it was harmless error. Errors are harmless unless we determine that it is more probable than not that the error materially affected the verdict. *See United States v. Daniel*, 134 F.3d 1259, 1262 (6th Cir.1998) (quoting *United States v. Fountain*, 2 F.3d 656, 668 (6th Cir.1993)). There was extensive evidence that Wheeler was involved in a drug conspiracy with several people and that he ran a marijuana operation from his various residences. Moreover, no further testimony on the subject of gang involvement or graffiti was introduced and the other evidence of Wheeler's guilt, e.g., the witnesses' testimony and evidence seized from his residence, would tend to show that the error was harmless. Accordingly, we find that the introduction of this evidence did not materially affect the verdict in this case and therefore the district court did not err in admitting the sheets of paper into evidence.

2.  *Evidence of ownership of pit bull terrier dogs*

Wheeler also appeals the Government's introduction of evidence that he owned vicious pit bull dogs that were used to protect his drug operations. At trial, there were several references to the dogs but Wheeler seems to challenge only the testimony by Genesee County Deputy David Krish concerning Wheeler's dogs. Krish testified that, while at Wheeler's home investigating a complaint, Wheeler told him that "he would send the Pit Bulls on the police." Wheeler's attorney object-

ed and the Government argued that Wheeler's statement about the dogs showed "consciousness of guilt." Wheeler's attorney explained, "I object to the relevancy of whatever my client may have said about Pit Bulls." The district court overruled the objection and Krish testified further that police officers had trouble approaching Wheeler's residence because of the aggressiveness of the dogs. On cross-examination, Wheeler's attorney asked Krish if he knew of any incidents of the dogs biting someone. The court ended further questioning on the subject stating, "I think I covered [whether Krish knows if the dogs bit anyone] just to move along, Mr. Steingold.... He says they were threatening appearing dogs."

Later in the trial Wesley Reade Haley, a key government witness, was asked about Wheeler's pit bulls and testified that Wheeler was interested in pit bulls and that he kept them for dog fighting, and not for attacking people. Wheeler's attorney objected to the relevancy of this testimony and the district court struck the testimony as irrelevant and instructed the jurors to disregard it. Wheeler argues that if Haley's testimony regarding the dogs was struck from the record, then Krish's testimony regarding the dogs similarly should have been struck.

As discussed, there was extensive testimony during the trial regarding Wheeler's ownership of pit bulls. In addition to the testimony discussed above, an ATF agent was allowed by the court to rebut testimony that the dogs were not vicious. Tiara Rae Tatro, who was Wheeler's girlfriend, a co-conspirator, and a Government witness, testified about the dogs' demeanor and why she believed that the Defendant was keeping the dogs.

■ The district court did not err in allowing the Government to introduce evidence of Wheeler's ownership of pit bulls.

The Government sought to introduce the dogs as evidence of Wheeler's involvement in a drug conspiracy, analogous to a firearm, and not as evidence of other crimes. wrongs, or acts under FRE 404(b). *United ed States v. Ware*, 161 F.3d 414, 418 (6th Cir.1998) ("The evidence seized [including a firearm] pursuant to the search warrant was not evidence of other crimes or wrongs, but of involvement in the cocaine conspiracy at issue. Therefore, Rule 404(b) was simply not applicable."). Moreover, under FRE 404(b) the Government may be able to admit the evidence to prove a plan or as "tools of the trade." *See* FED.R.EVID. 404(b); *Ware*, 161 F.3d at 417–18. The Government sought to use the evidence of Defendant's ownership of the dogs as evidence that he possessed "tools" of the drug trade and the admittance of such evidence is within the sound discretion of the district court. Therefore, the district court did not err in allowing Krish to testify about the dogs he encountered at Wheeler's residence.

## B. Motion for Acquittal

Wheeler argues that the district court erred in denying his Federal Rule of Criminal Procedure 29 motion for judgment of acquittal on Count One, conspiracy to distribute marijuana. He argues that, though the Government is able to prove that Wheeler sold marijuana, the Government did not present sufficient evidence to prove the existence of a conspiracy. Wheeler made a Rule 29 motion on all counts after the Government rested and renewed the motion at the close of all evidence. The court denied the motion as to Counts Two, Three, Six, Seven and Eight because the court concluded that Wheeler had abandoned the motion as to those counts. The court denied the motion as to Count Five and reserved decision on the motion regarding Count One. After the

jury verdict, the court denied the motion as to Count One.

A defendant asserting a claim of insufficiency of the evidence has a heavy burden. *United States v. Branham,* 97 F.3d 835, 853 (6th Cir.1996). We review a claim of insufficient evidence by assessing "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Evans,* 883 F.2d 496, 501 (6th Cir.1989) (emphasis in the original) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979))

■ To prove a conspiracy under 21 U.S.C. § 846, "the government must prove the existence of an agreement to violate the drug laws and that each conspirator knew of, intended to join and participated in the conspiracy." *United States v. Pearce,* 912 F.2d 159, 161 (6th Cir.1990) (quoting *United States v. Stanley,* 765 F.2d 1224, 1237 (5th Cir.1985)). We have held that "the government need not prove a formal agreement to establish the existence of a conspiracy to violate federal law and that a tacit or mutual understanding among the parties will suffice." *United States v. Ellzey,* 874 F.2d 324, 328 (6th Cir.1989). "Moreover, '[a] conspiracy may be inferred from circumstantial evidence that can reasonably be interpreted as participation in the common plan.'" *Id.* (quoting *United States v. Bavers,* 787 F.2d 1022, 1026 (6th Cir.1985)).

Defendant is correct in asserting that the jury acquitted him of conspiracy to distribute cocaine. However, the Government presented extensive evidence, including testimony from Haley, Tatro, and Marcus Funches that there was an agreement to distribute marijuana between Wheeler and these witnesses. Each one of these witnesses, and Wheeler, had knowledge of the drug operation and the various parties that were participating in it. The evidence also shows that the involvement of the participants in the operation was knowing and intentional.

In his Reply Brief, the Defendant raised the argument for the first time that the Government was unable to prove that he was a member of the particular conspiracy charged in Count One of the indictment. He argues, instead, that he was a part of some other drug conspiracy. The Defendant argues that because he was acquitted of conspiracy to distribute cocaine, he should have also been acquitted of conspiracy to distribute marijuana because the indictment charged him with conspiracy to distribute both substances.

At oral argument, the Defendant raised the argument for the first time that the Government was unable to prove either he conspired to distribute marijuana between 1994 and 2000 or that he conspired to distribute at least 100 kilograms of marijuana. Defendant argues that, based on the testimony of witnesses and the evidence seized, the Government is unable to prove that he conspired to distribute over 100 kilograms of marijuana. He argues that, at most, the Government was able to show from the testimony of Funches and the various evidence seized that he distributed only 494 grams of marijuana. Because of the insufficiency of the evidence to prove that he distributed 100 kilograms of marijuana, Defendant argues that either (1) he should have be sentenced under 21 U.S.C. § 841(b)(1)(D) to zero to five years for distributing less than fifty kilograms of marijuana instead of under 21 U.S.C. § 841(b)(1)(B) to five to forty years for distributing 100 kilograms or more of marijuana; or (2) he should be acquitted of Count One. Defendant also raised the argument for the first time during oral argument that because the indictment charged

him with distributing 1000 kilograms of marijuana and the Government did not prove that he distributed that amount, he should be acquitted.

Because the propriety of raising arguments for the first time in a reply brief or at oral arguments is highly suspect, we only briefly discuss the merits of Defendant's new claims. As we held in *United States v. Dale,* 178 F.3d 429, 431 (6th Cir.1999): "It has been clear since *Braverman v. United States,* 317 U.S. 49, 54, 63 S.Ct. 99, 87 L.Ed. 23 (1942), that the allegation, in a single count of conspiracy, of an agreement to commit several crimes is not duplicitous, as conspiracy is itself the crime." In *Dale,* the defendant was found guilty by a jury of a single conspiracy to distribute both crack cocaine and marijuana, as charged in the indictment. We remanded the case because we found that the district court had committed plain error by sentencing Dale using the statutory maximum sentence for crack rather than for marijuana. *Id.* at 434. However, the critical difference between *Dale* and the case at bar is that here the Government used a special verdict form whereas in *Dale* the jury only returned a general verdict form. *Id.* at 433. In this case, the jury returned a special verdict form finding the Defendant guilty of conspiracy to distribute between 100 and 1,000 kilograms of marijuana. We decline to indulge Defendant in his mathematical diversion of calculating the amount of marijuana he believes the jury should have convicted him of possessing given the testimony of Funches and the amount seized during various searches. The jury found that he had conspired to distribute between 100 and 1,000 kilograms of marijuana within a given range and that verdict will stand. Furthermore, Defendant's argument that because the Government failed to prove that he distributed 1,000 kilograms of marijuana he should be acquitted, is without

merit. There is no authority to support the proposition that the Government's failure to prove the amount charged in the indictment should result in acquittal. If the Government charged the Defendant in good faith with distributing 1,000 kilograms of marijuana, then it is the jury's decision as to how much marijuana actually was distributed. The jury determined that Defendant had conspired to distribute between 100 and 1,000 kilograms of marijuana and therefore he is guilty as charged.

■ We conclude that all the necessary elements to finding a conspiracy to distribute marijuana are met. Therefore, in viewing the evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of a conspiracy beyond a reasonable doubt. Accordingly, Defendant has not met his heavy burden of showing that no rational trier of fact could have found him guilty of forming an agreement to distribute marijuana.

### C. Sentencing Enhancements

The district court granted Wheeler leave to file a pro se supplemental brief challenging three sentencing enhancements.

#### 1. *Organizer or leader*

In the PSI, the Government proposed an enhancement for a leadership role. United States Sentencing Guidelines § 3B1.1(a) provides:

Based on the defendant's role in the offense, increase the offense level as follows:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

The guidelines define a "participant" as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S. SENTENCING GUIDELINES MANUAL § 3B1.1 cmt. n. 1 (2000). The five individuals identified by the Government as involved in the drug conspiracy were Tatro, Funches, Haley, Chad Lamson, and Brian James. At the sentencing hearing. Wheeler argued that there was not a preponderance of evidence to support the conclusion that five or more participants were involved in Wheeler's criminal activity. Specifically, Wheeler argued that Lamson and James were merely regular customers and not participants in the drug conspiracy, and that Haley denied involvement in the drug conspiracy. Wheeler argues that, at most, he should have been subject to a two-level enhancement under USSG § 3B1.1(c) ("If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.").

The district court, after hearing testimony, concluded that "there is sufficient evidence to indicate that—that the defendant was an organizer or a leader that involved five or more participants including himself."

An enhancement under § 3B1.1(a) is subject to review for clear error. *United States v. Ward,* 68 F.3d 146, 151 (6th Cir. 1995); *see also* 18 U.S.C. § 3742 ("The court of appeals shall ... accept the findings of fact unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts."). The district court's findings of fact must be based on a preponderance of the evidence. *Ward,* 68 F.3d at 151 (citation omitted).

■ Lamson testified at trial that Wheeler supplied him with marijuana and cocaine:

Q   But you also in turn were selling it?

A   Yeah.

Q   Was [Wheeler] a reliable supplier for you while you were selling it of [sic] cocaine and marijuana?

A   Yes.

Q   Could you depend on him having the stuff?

A   Yes.

Lamson also testified at trial that he purchased cocaine and marijuana from Wheeler several times, and that he was at Wheeler's residence nearly every day for two years. Lamson's father testified that "[Wheeler] was turning my son into one of his little cronies," and he "told [his son] that he wasn't allowed to—hang around with Audie anymore." Lamson's father subsequently moved him to another town in order to stop him from associating with Wheeler. Accordingly, it was not clearly erroneous for the district court to conclude that Lamson was a participant in Wheeler's drug activity, and not merely one of Wheeler's customers. *See also* discussion *infra,* Part II, C, 2, *Use of a minor.*

■ Defendant also claims that James was merely a customer. At the sentencing hearing the Government did not argue otherwise, but merely stated that "even if you wanted to give counsel his argument that James should not be included, there's still five people that are named." Therefore, we can assume that the district court disregarded James as a participant in Wheeler's drug conspiracy. However, even if it was found that the James was merely a customer, the enhancement is still supported by a preponderance of the evidence because Wheeler, Tatro. Funches. Haley, and Lamson would constitute five participants under the guidelines. *See* U.S. SENTENCING GUIDELINES MANUAL § 3B1.1 cmt. n. 1 (2000).

Wheeler also argued at the sentencing hearing that Haley never admitted involvement in Wheeler's drug trafficking and the Government never proved his involvement. In his testimony, Haley never directly admits to being involved in Wheeler's drug conspiracy. However, the Government did elicit testimony from Haley regarding his plea agreement in which the Government would ask for a sentencing reduction for his charges if he testified against Wheeler. Furthermore, Haley was a co-defendant in this case and pleaded guilty to Count Six of the Fifth Superseding Indictment, Felon in Possession of a Firearm. Haley testified that he lived with Wheeler and a friend of Wheeler's at at least three residences where Wheeler conducted his drug operations. Chad Lamson testified to Haley's role in the operation as: "The brut [sic] squad. If [Wheeler] needed someone to fight him, he'd tell [Haley] to go fight them." Thomas Lamson testified that "[Haley] took over Marcus' spot after Marcus was locked up.... [H]e became like Audie's right hand man.... Audie didn't ever go anywhere without him."

■ Both the jury and the district court accepted the Government's argument that Haley was acting as Wheeler's bodyguard in his drug operations and that he was not only Wheeler's customer but an integral part of Wheeler's drug operation. Given the evidence presented and the district court's determination of the credibility of the witnesses, it was not clearly erroneous for the district court to conclude that Haley was a participant in Wheeler's drug operation. Accordingly, Wheeler's challenge to the § 3B1.1(a) enhancement is without merit and the district court's decision was not clearly erroneous.

*2. Use of a minor*

Wheeler also received a sentencing enhancement for the use of a minor under § 3B1.4. That section provides in relevant part:

If the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense, increase by 2 levels.

U.S. Sentencing Guidelines Manual § 3B1.4 (2000). Application Note one of § 3B1.4 reads:

1. "Used or attempted to use" includes directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting

Wheeler argues that Lamson, though a minor at the time Wheeler committed the conspiracy to distribute marijuana offense, was merely a customer and not being "used" by Wheeler in his drug activities. After hearing testimony on the issue, the district court concluded that "the evidence in the case, the testimony at trial adequately supports the Government's claim that Mr. Wheeler did indeed use a minor to commit a crime and therefore the two level enhancement is appropriate."

We review a district court's application of the Guidelines *de novo*, however, the district court's findings of fact are reviewed for clear error. *United States v. Dupree*, 323 F.3d 480, 484 (6th Cir.2003); *United States v. Cowan*, 196 F.3d 646, 647–48 (6th Cir.1999).

In *United States v. Butler*, 207 F.3d 839, 849 (6th Cir.2000), we held that an enhancement under § 3B1.4 "requires a showing of more than a mere criminal partnership." In reversing the defendant's sentence enhancement in *Butler*, we held that the Government was required to show that the defendant actively and intentionally used a minor in the commission of the offense. *Id.* at 848. ("Congress' inclusion of these considerations indicates that to deserve § 3B1.4 enhancement, one

must do more than simply participate in crime with a minor.").

■ As the discussion above demonstrates, Lamson was not merely Wheeler's customer. *See* discussion *supra*, Part II, C, 1, *Organizer or Leader*. Wheeler supplied drugs to Lamson for him to distribute and Lamson testified that he had constant contact with Wheeler, even running away from his home to live with Wheeler for a few weeks. Lamson's father testified that Chad was involved in Wheeler's drug business, though Chad himself denies any direct involvement. The district court rejected Wheeler's argument that he did not know that Lamson was selling the drugs he purchased from Wheeler. Instead, the district court found that by supplying drugs to Lamson, he was "using" him in his conspiracy to distribute drugs and this fit the definition of "used" under USSG § 3B1.4. This finding was not clearly erroneous.

Furthermore, testimony at trial showed that Lamson was with Wheeler almost every day and very knowledgeable about Wheeler's drug business. Undoubtedly, Wheeler trained Lamson about the drug business and encouraged Lamson's use and distribution of drugs. With these affirmative actions, Wheeler's interaction with Lamson fits the definition of "use" as defined in the Guidelines. *See Butler*, 207 F.3d at 847. ("A consideration of the definitions of 'use' supports the notion that § 3B1.4 would require more affirmative action on the part of a defendant."). Lamson also testified that Wheeler threatened to harm him if he talked with the authorities about Wheeler's drug operation. Under the Guidelines, this threat would constitute the "use" of a minor by threats to avoid detection of the offense. U.S. SENTENCING GUIDELINES MANUAL § 3B1.4 cmt. n. 1. Accordingly, the district court did not err in finding that the circumstantial evidence indicated that Lamson was more than just a customer and the two-level enhancement was not clearly erroneous.

### 3. Obstruction of justice

Finally, Wheeler appeals his two-level enhancement for obstruction of justice under USSG § 3C1.1. The probation officer recommended the enhancement because he claimed that Wheeler, among other things, threatened Haley on September 13, 2000 while both Wheeler and Haley were at the Genesee county jail. Wheeler argues that he did not threaten Haley, and that it was actually Haley who threatened him.

Section 3C1.1 reads in relevant part:

If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

U.S. SENTENCING GUIDELINES MANUAL § 3C1.1 (2000). Application Note four of § 3C1.1 reads:

The following is a non-exhaustive list of examples of the types of conduct to which this adjustment applies:

(a) threatening, intimidating, or otherwise unlawfully influencing a codefendant, witness, or juror, directly or indirectly, or attempting to do so. . . .

On May 24, 2001, the district court held an evidentiary hearing on the Government's request for an enhancement under § 3C1.1. At the hearing, five individuals testified: (1) Haley; (2) Wheeler; (3) Matthew Rule, a deputy at the Genesee County Sheriff's Department; (4) Tamika Taylor, a deputy at the Genesee County

Sheriff's Department; and (5) James Fulger, a deputy U.S. Marshal in Flint, Michigan. The Government also admitted two pieces of evidence: (1) a report made by Rule describing the September 13, 2000 incident at the jail where Wheeler threatened Haley; and (2) a report from the U.S. Marshal Service in which Fulger overheard Wheeler threatening Haley at the jail on September 13, 2000. In overruling Wheeler's objection to the enhancement, the district court concluded:

> [T]he Court first of all has to weigh the situation insofar as credibility is concerned. There are two things that really weigh rather heavily against Mr. Wheeler on the issue of credibility. First of all, of course, is his record of criminal behavior, criminal involvement over the years ... In addition to that ... Mr. Wheeler certainly has a vitally important interest.... Mr. Wheeler says yeah, that— that he described Mr.— in a loud voice he described Mr. Haley as a snitch in a stream of profane commentary about Mr. Haley.
>
> ...
>
> But Mr. Haley sure enough is a snitch, no about it, he testified. And Mr. Wheeler let everybody know that he was a snitch. Now they can believe what they want about—about whether Mr. Wheeler has ever been a snitch, but they're going to know that Mr. Haley is because he's going to give testimony in the case. And therefore it seems to me that Mr. Wheeler when he lets everybody know loudly and profanely in that jail what Mr. Haley is ... he's certainly putting Mr. Haley in what he himself described as a situation where Mr. Haley may get hurt.
> Now that seems to me that's intimidation. On balance, I would think—it's the Court's impression here that the Government on that matter, that is the

matter of whether Mr. Haley was threatened, whether there was an attempt to intimidate him and therefore obstruct justice, whether that occurred in this case, the preponderance of the evidence convinces the Court that that is with the position of the—of the Government on this particular point.

In *United States v. Jackson–Randolph*, 282 F.3d 369, 389 (6th Cir.2002). we settled a long-standing debate in this Circuit regarding the standard of review for enhancements under § 3C1.1. Relying on the Supreme Court's decision in *Buford v. United States*, 532 U.S. 59, 121 S.Ct. 1276, 149 L.Ed.2d 197 (2001). we "change[d] our prior analyses of the appropriate standard of review of the § 3C1.1 enhancement." *Jackson–Randolph*, 282 F.3d at 389. We concluded that "the clear error standard is also appropriate for reviewing sentencing decisions under § 3C1.1 where the sole issue before the district court is a fact-bound application of the guideline provisions." *Id.* at 390.

■ In applying this deferential standard of review to the credibility determinations and the factual findings of the sentencing court, we affirm the enhancement for obstruction of justice. The district court found Wheeler's version of events unpersuasive and concluded that Wheeler made the threats as testified to by Haley, Rule, Fulger, and Taylor. The district court conducted a hearing, heard witness testimony, and reviewed the reports that were admitted, and we do not find that the district court's determinations were clearly erroneous.

### D.   Ineffective Assistance of Counsel

Finally, Defendant argues that "[w]hile retained Counsel worked hard, no doubt, before and during the trial proceedings, Defendant's case clearly lost momentum once the jury rendered its verdict." De-

fendant argues that his trial counsel was ineffective because he did not file a renewed motion for judgment of acquittal on all counts within seven days of the verdict, pursuant to Federal Rule of Criminal Procedure 29. Though counsel did file such a motion at the close of the Government's case, counsel chose not to renew the motion after the verdict was rendered. Defendant argues that had the renewed motion been successful, his base offense level would have been significantly lower and consequently his sentence would have been lower. In his reply brief, Defendant also argues for the first time that a renewed Rule 29 motion would have been successful because the Government was unable to present sufficient evidence that the Defendant was a part of the conspiracy charged in the indictment, and that the Defendant conspired to distribute more than 100 kilograms of marijuana.

Again, we question the propriety of raising arguments for the. first time in a reply brief. However, we generally do not address on direct appeal claims of ineffective assistance of counsel unless the record has been sufficiently developed to provide meaningful factual review. *See, e.g., United States v. Brown,* 276 F.3d 211, 217 (6th Cir.2002). In this case, we have no evidence to evaluate counsel's decision not to file a renewed motion for acquittal. We only have an Order sanctioning Wheeler's trial attorney for recklessly filing a motion for a new trial. The attorney filed the motion asserting that the jury foreperson:

> had improper communications with persons outside the jury regarding the case while it was being tried, had improper communications with other jurors in the case while the matter was being tried and failed to inform this Court of her familiarity with Defendant Audie Wheeler both before and during the trial of this case.

The court held a hearing on July 12.2001, and in ordering sanctions against the attorney, the district court found that the attorney was reckless in filing the motion because he never investigated "the veracity of the representations on which the motion was based."

■ Other than this incident, we have no evidence on the record regarding the attorney's trial performance in general, and no specific evidence regarding the attorney's decision not to file a renewed motion for acquittal on all charges. Accordingly, we will defer review of these claims to a post-conviction proceeding in order to allow the record to be more fully developed. *See also United States v. Aguwa,* 123 F.3d 418, 423 (6th Cir.1997) ("Our court has routinely concluded that such claims are best brought by a defendant in a post-conviction proceeding under 28 U.S.C. § 2255.").

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of conviction and sentence of the district court.