NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0233n.06

No. 08-6496

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Apr 14, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee,* | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| VICTOR RAY THOMAS, | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellant.* | ) | |

BEFORE:    GUY, COLE, SUTTON, Circuit Judges.

**COLE, Circuit Judge.** Defendant-Appellant Victor Ray Thomas challenges his 360-month

sentence for conspiracy to possess with intent to distribute methamphetamine, in violation of 18

U.S.C. § 846, and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).  For

the reasons explained below, we **AFFIRM** his sentence.

## I. BACKGROUND

On June 6, 2007, following a two-year investigation, Shelby County narcotics officers

executed a search warrant at Thomas's Memphis residence, recovering four firearms; small

quantities of marijuana, cocaine, crack-cocaine, and Hydrocodone; two sets of scales and other drug

paraphernalia; and $ 3,195 in cash.  After being advised of his Miranda rights, Thomas confessed

to dealing methamphetamine in the Memphis area since February 2006.  He estimated that he had

sold between fifty and sixty pounds of the narcotic during that time, but acknowledged that it was

difficult to be any more precise due to the large number of sales he had conducted.

On June 20, a federal grand jury indicted Thomas and three associates on various narcotics and firearms-related charges. On July 3, Thomas entered a plea of guilty to conspiracy to possess with intent to distribute in excess of five hundred grams of methamphetamine and being a felon in possession of a firearm. The pre-sentence investigation report ("PSR") set Thomas's base offense level at thirty-eight and recommended (i) a two-level enhancement pursuant to United States Sentencing Guideline ("U.S.S.G.") § 2D1.1(b)(1) for possession of a firearm, (ii) a four-level enhancement pursuant to U.S.S.G. § 3B1.1(a) for being an organizer or leader of a criminal activity involving five or more participants, and (iii) a three-level reduction pursuant to U.S.S.G. § 3E1.1 for acceptance of responsibility, resulting in a total offense level of forty-one. Based on Thomas's sixteen criminal history points, the PSR assigned a criminal history category of VI, producing an advisory Guidelines sentencing range of 360 months to life. Thomas objected to the four-level enhancement under U.S.S.G. § 3B1.1(a), arguing that a two-level enhancement under U.S.S.G. § 3B1.1(c) would be more appropriate. This adjustment would have lowered his total offense level to thirty-nine but produced the same advisory sentencing range of 360 months to life.

At Thomas's sentencing hearing on December 8, 2008, the district court rejected this objection. The court reasoned:

> Under 3B1.1, aggravating role, it provides that if the defendant was an organizer or a leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by four levels. . . . In asserting whether an organization is otherwise extensive, all persons involved during the course of the entire offense are to be considered. . . . The amount of material in this case was pretty phenomenal, and it appears that the numerical minimum is met, but even if it were not, clearly, it was a very extensive operation. A lot of methamphetamine over a significant period of

time. And extensive or otherwise extensive appears to be the correct characterization. I don't know that it makes any difference in terms of ultimate result in the case, but it's a case in which that's the proper characterization. So the four-point enhancement is appropriate.

Adopting the total offense level, criminal history category, and advisory Guidelines sentencing range set out in the PSR, the court then considered the sentencing factors listed in 18 U.S.C. § 3553(a). Noting that "if anybody ever started out with everything loaded up against them, you kind of did," the court opined that Thomas nonetheless was "articulate" and a "caring father," was not "a bad guy," and had "a lot of ability in many respects." Against these factors the court weighed the substantial amount of narcotics involved, Thomas's past criminal conduct, and the need to deter others from committing the same offense and to protect the public. Accordingly, the court sentenced Thomas to 360-months imprisonment for the narcotics-conspiracy offense, the low end of the advisory sentencing range, to run concurrently with a ten-year sentence for the firearm-possession offense.

Thomas now appeals.

## II. ANALYSIS

Thomas raises two issues on appeal. First, he argues that the district court erred in applying a four-level enhancement pursuant to U.S.S.G. § 3B1.1(a) because his narcotics scheme involved no more than four individuals. Second, he argues that his sentence was procedurally unreasonable because the district court did not adequately consider his personal circumstances in its analysis of the 18 U.S.C. § 3553(a) factors.

### A.     U.S.S.G. § 3B1.1(a)

The standard of review that we apply to a district court's imposition of a leader or organizer

enhancement under U.S.S.G. § 3B1.1(a) is "subject to some debate." *United States v. Walls*, 546 F.3d 728, 734 (6th Cir. 2008) (internal quotation marks omitted) (describing arguable impact of *Buford v. United States*, 532 U.S. 59 (2001), on standard of review). Like previous panels of this court, we decline to resolve this debate because Thomas's sentence withstands scrutiny under either de novo or deferential review. *Cf. Walls*, 546 F.3d at 734 (finding it "'unnecessary to determine whether *Buford* requires us to alter the standard of review we apply in reviewing § 3B1.1 enhancements because [we] would have affirmed the district court's sentencing determination under either standard'") (quoting *United States v. McDaniel*, 398 F.3d 540, 551 n.10 (6th Cir. 2005)).

Thomas does not challenge the court's determination that he was a leader or organizer, but argues that the Government did not present evidence that his organization involved five or more participants, as required under § 3B1.1(a). Rather, according to Thomas, the evidence suggested at most four participants. However, a review of the record indicates that § 3B1.1(a)'s numerosity requirement was more than satisfied. For the purposes of § 3B1.1, a participant is "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S. Sentencing Guidelines Manual § 3B1.1 cmt. n.1 (2008); *see also United States v. Anthony*, 280 F.3d 694, 698 (6th Cir. 2002) (further defining "participants" as persons "who were (i) aware of the criminal objective and (ii) knowingly offered their assistance"). In addition to Thomas, the PSR identifies at least eight other participants in the criminal enterprise: Ashleigh Carter, who Thomas acknowledges was a participant; Jon Oliver, who sold methamphetamine and wired payments to California on Thomas' behalf; Marc Vandawalker, who acted as a middleman for Thomas and introduced him to Oliver; Michael Thompson, who traveled with Thomas to California to transport

methamphetamine and purchased ten to fifteen pounds of product from Thomas over the course of the conspiracy; Steven Ivy and Rayford Pratcher, who assisted Oliver with at least one attempted methamphetamine deal; "Na Na," Thomas's main source of methamphetamine in California; and Sergio "LNU" (last name unknown), Na Na's middleman. In addition, testimony presented by the Government at the sentencing hearing identified three other participants in the criminal enterprise: Demetrius Powell, who moved drugs for Thomas; Debra Williams, who also assisted in transporting Thomas's drugs; and Nancy LNU, who also was involved in sourcing and / or transporting the drugs. Thomas presents no argument why any of these eleven individuals should not be considered a participant in the conspiracy.

We do not include in the tally several individuals, including one or more undercover officers, who merely purchased methamphetamine from Thomas, since they do not qualify under § 3B1.1(a) as participants in his narcotics distribution conspiracy. *See* U.S. Sentencing Guidelines Manual § 3B1.1 cmt. n.1 (2008) ("A person who is not criminally responsible for the commission of the offense (u.g., an undercover law enforcement officer) is not a participant."); *cf. United States v. Wheeler*, 67 F. App'x 296, 304 (6th Cir. 2003) (finding that individuals were participants in criminal scheme, not merely customers); *United States v. Cashin*, No. 92-2555, 1994 WL 47784, at *8 (6th Cir. 1994) (same). Moreover, while the numerosity requirement was satisfied, we note that the district court's alternative finding—that even were this requirement not satisfied, the enterprise should be considered "otherwise extensive" under § 3B1.1(a) because it involved "a lot of methamphetamine over a significant period of time"—appears to disregard our holding that the "width, breadth, scope, complexity and duration of the scheme" are not relevant to the § 3B1.1(a)

analysis. *See Anthony*, 280 F.3d at 699 (rejecting totality of the circumstances analysis and holding that criminal enterprise may be found "otherwise extensive" under § 3B1.1 only "when the combination of knowing participants and non-participants in the offense is the functional equivalent of an activity involving five criminally responsible participants"). Finally, we also note that our review would be assisted greatly by the district court's identifying the individuals it found were participants in Thomas's scheme. But since the court properly held that the numerosity requirement of § 3B1.1 was satisfied, we find no error. *Cf. United States v. Vandeberg*, 201 F.3d 805, 809-811 (6th Cir. 2000) (noting that failure to specify factual basis for application of § 3B1.1 enhancement is not grounds for vacating the sentence but may necessitate de novo review).

**B.** **Reasonableness of the sentence**

Thomas next argues that his sentence was unreasonable because the district court failed to consider adequately his personal circumstances in its analysis of the 18 U.S.C. § 3553(a) factors. The PSR details that Thomas indeed faced difficult circumstances growing up. Abandoned as an infant by his mother, a drug addict who has been missing since 2003, Thomas was raised in South Central Los Angeles by his grandmother and (after her death when he was ten years old) his great-grandparents, and did not meet his father, who is now serving two life sentences for drug offences, until he was seventeen years old. Nonetheless, the record clearly demonstrates that the district court considered Thomas's circumstances and character, weighing these against the substantial amount of narcotics Thomas had distributed, his past criminal conduct, and the need to deter crime and protect the public in handing down a sentence at the bottom end of the advisory Guidelines range. A district court need only "set forth enough to satisfy the appellate court that he has considered the parties'

arguments and has a reasoned  basis for exercising his own legal decisionmaking authority." *Rita*

*v. United States*, 551 U.S. 338, 356  (2007).  The district court has done so here.

### III.  CONCLUSION

For these reasons, we **AFFIRM** Thomas's sentence.